G. Jefferson Campbell, Jr., OSB #750611
gjcpc@qwestoffice.net
G. JEFFERSON CAMPBELL, JR., P.C.
PO Box 296
Medford, OR 97501
Telephone: (541) 776-5025
Facsimile:  (541) 779-3306

Of Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

### Medford Division

MARY A. HART,

               Plaintiff,

      vs.

PACIFIC TRUST BANK,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
BANK OF AMERICA, N.A.,
RECONTRUST COMPANY, N.A.,
NORTHWEST TRUSTEE
SERVICES, INC., and FEDERAL
NATIONAL MORTGAGE
ASSOCIATION,

              Defendants.

Case No. 12-00705-PA

**AMENDED COMPLAINT**

(Claim for Declaratory Relief and
 to Quiet Title to Real Property
 Resulting From Attempted Defective
 Private Trustee Foreclosure Sale)

      Plaintiff alleges:

### NATURE OF ACTION

1.

      This is a declaratory relief action filed under the provisions of the Federal

Declaratory Relief Act, 29 U.S.C. §§ 2201, et seq., and under the Oregon Uniform

Declaratory Judgments Act, ORS 28.010, et seq, in which the Plaintiff seeks to have this

**AMENDED COMPLAINT - 1**

Court declare that an attempted non-judicial, private trustee foreclosure sale conducted on or about May 14, 2012, with regard to certain real property located in Grants Pass, Josephine County, Oregon in which the Plaintiff has a fee simple ownership interest, was legally defective and void.  Plaintiff further seeks in this declaratory relief action to have this Court quiet title to the subject real property in the Plaintiff by declaring that her fee simple ownership interest in this parcel of real property was not validly foreclosed as a result of the attempted defective non-judicial, private trustee foreclosure sale and that she is now entitled to possession of the subject real property.

## JURISDICTION AND VENUE

2.

This Court has jurisdiction over this action under the diversity of citizenship provisions of 28 U.S.C. §1332, as all of the Defendants are citizens of other states than the Plaintiff, and the amount in controversy is in excess of $75,000.

3.

Venue is proper in this Court under the provisions of 28 U.S.C. §1391, as the property that is the subject of this action is all located in this judicial district.

## PARTIES

4.

Plaintiff is a resident of Josephine County, Oregon.  At all times material to this action, Plaintiff held an ownership interest in fee simple in a parcel of real property located at 990 Fish Hatchery Road, Grants Pass, Josephine County, Oregon, which is more particularly described in the legal description set forth in the Warranty Deed that is attached to this Amended Complaint as Exhibit "A" and by reference incorporated herein. This parcel of real property is hereinafter often referred to as "the property."

5.

Upon information and belief, based upon its Form 10-K filing, dated December 31,

**AMENDED COMPLAINT - 2**

2011, with the United States Securities and Exchange Commission, Plaintiff alleges that First PacTrust Bancorp., Inc. is a foreign, publicly traded, Maryland corporation, which is a unitary savings and loan holding company; that it is subject to regulation by the Board of Governors of the Federal Reserve System; and that Defendant First Pac Trust Bancorp, Inc. holds all of the stock of the Defendant Pacific Trust Bank. Upon information and belief, based upon the Form 8-K filing, dated August 20, 2012, of First PacTrust Bancorp, Inc., with the United States Securities and Exchange Commission and other similar registrations, Plaintiff alleges that First PacTrust Bancorp, Inc. acquired Gateway Bancorp, Inc., which was the holding company for Gateway Business Bank, a California state chartered commercial bank, on August 20, 2012. Upon information and belief, based upon the Form 8-K filing, dated August 20, 2012, of the Defendant First PacTrust Bancorp., Inc. with the United States Securities and Exchange Commission, Plaintiff alleges that Gateway Business Bank was thereafter merged into the Defendant Pacific Trust Bank. Upon information and belief, based upon the Form 8-K filing, August 20, 2012, of the Defendant First PacTrust Bancorp., Inc., Plaintiff alleges that as a result of the foregoing acquisition and merger Mission Hills Mortgage Bankers, which had been a division of Gateway Business Bank, became a division of the Defendant Pacific Trust Bank. Upon information and belief, based upon corporate filings with the California Secretary of State's office and further anticipated to be established by discovery to be undertaken in this action, Plaintiff alleges that Mission Hills Mortgage Corporation had previously been merged and became Mission Hills Mortgage Bankers, a division of Gateway Business Bank, before Mission Hills Mortgage Bankers became a division of Defendant Pacific Trust Bank in August, 2012.

6.

Plaintiff alleges that Defendant Pacific Trust Bank (hereinafter "Defendant Pacific Trust") is a federally chartered stock savings bank, subject to regulation by the United

**AMENDED COMPLAINT - 3**

States Department of Treasury Office of the Comptroller of the Currency.  Defendant Pacific Trust's principal offices are located in Irvine, California.  Upon information and belief and anticipated to be established through discovery in this action, Defendant Pacific Trust now has or may now claim an interest in the promissory note and first trust deed on the property arising out of an original purchase money loan originated by Mission Hills Mortgage Corporation with the Plaintiff in January, 2002, which is the subject of this action.

7.

Defendant Mortgage Electronic Registrations Systems, Inc. (hereinafter "Defendant MERS") is a foreign Delaware corporation, which is owned by its members, who are users of its services.  At all times material to this action, Defendant MERS operated and maintained a private computerized database system in which it kept track of the assignment of mortgages and trust deeds on the secondary mortgage market by and between financial institutions and its members.  At all times material to this action, Defendant MERS held no beneficial interest in and received no monetary benefits from any promissory notes or debt instruments secured by trust deeds on which it kept a record of assignments, although it was normally designated as the "beneficiary" under these trust deeds.  Defendant MERS was created, in large part, in an attempt to avoid the recording of assignments of trust deeds and mortgages in the local county deed and lien records across the United States of America.  On information and belief and anticipated to be established through further discovery in this action, Plaintiff alleges that the Defendant MERS' principal offices are in Flint, Michigan.

8.

Countrywide Financial Corporation is or was a thrift holding company, incorporated in the State of Delaware.  Countrywide Financial Corporation had its principal offices in Calabasas, California.  Countrywide Financial Corporation operated a

**AMENDED COMPLAINT - 4**

wholly-owned subsidiary corporation, Countrywide Home Loans, Inc., which is or was a foreign New York corporation and a licensed mortgage banking organization. Countrywide Home Loans, Inc. had its principal offices in Simi Valley, California. Upon information and belief and anticipated to be established through discovery, Countrywide Financial Corporation also operated through other controlled legal entities a subsidiary, Countrywide Home Loans Servicing, LP, a foreign Texas limited liability company, which was engaged in servicing of loans, including those originated by Countrywide Home Loans, Inc.  Countrywide Home Loans Servicing, LP had its principal offices in Dallas, Texas.  On or about July 1, 2008, Bank of America Corporation, a foreign Delaware corporation and bank holding company subject to regulation by the Federal Reserve System, acquired Countrywide Financial Corporation and its subsidiaries, including Countrywide Home Loans, Inc. and Countrywide Home Loans Servicing, LP. On or about April, 2009, Bank of America Corporation renamed and "rebranded" Countrywide Home Loans, Inc. as "BAC Home Loans, Inc." and Countrywide Home Loans Servicing, LP, as "BAC Home Loans Servicing, LP."  On or about October 29, 2009, Countrywide Home Loans Servicing, LP filed a name change certificate with the Texas Secretary of State to legally change its name to BAC Home Loans Servicing, LP. Upon information and belief and anticipated to be established through discovery in this action, BAC Home Loans, Inc. and BAC Home Loans Servicing, LP had their principal offices in Simi Valley, California.  On or about July 8, 2011, Bank of America, N.A. merged with BAC Home Loans, Inc. and BAC Home Loans Servicing, LP, and thereafter took over the operations of these two former subsidiaries of Bank of America Corporation, as part of its operations.

9.

Defendant Bank of America, N.A. (hereinafter "Defendant B of A") is a federally chartered, Federal Reserve member, national commercial bank, supervised by the Office

**AMENDED COMPLAINT - 5**

of the Comptroller of the Currency (OCC).  Defendant B of A principal offices are located in Charlotte, North Carolina.  Upon information and belief and anticipated tob e established through discovery in this action, Plaintiff alleges that Defendant B of A has or may now claim an interest in the promissory note and first trust deed on the property for the original purchase money loan originated by Mission Hills Mortgage Corporation with the Plaintiff in January, 2002, which is the subject of this action.

10.

Defendant ReconTrust Company, N.A. (hereinafter "Defendant ReconTrust") is a federally chartered national commercial bank, supervised by the Office of the Comptroller of the Currency (OCC), with its principal offices located in Simi Valley, California.  Defendant ReconTrust Company, N.A. is a wholly-owned subsidiary of Bank of America Corporation.  Defendant ReconTrust provides default services, including acting as a successor trustee on trust deeds that were being non-judicially foreclosed upon by BAC Home Loans, Inc. and/or BAC Home Loans Servicing, LP in the State of Oregon and elsewhere, prior to these legal entities' merger and acquisition by the Defendant B of A.  Defendant ReconTrust has also provided such default services for the Defendant B of A after its merger and acquisition of BAC Home Loans, Inc. and BAC Home Loans Servicing, LP in the State of Oregon and elsewhere.

11.

Defendant Northwest Trustee Services, Inc. (hereinafter "Defendant NW Trustee") is a foreign Washington corporation with its principal offices located in Bellevue, Washington.  Defendant NW Trustee provides default services to lenders and financial institutions, including acting as the successor trustee on trust deeds being non-judicially foreclosed upon in the State of Oregon and elsewhere.

12.

Defendant Federal National Mortgage Association (hereinafter "Defendant Fannie

**AMENDED COMPLAINT - 6**

Mae") is a publicly traded, federal corporation, and a so-called "government sponsored enterprise" ("GSE").  Defendant Fannie Mae's operating purpose is to expand the secondary mortgage market often by securitizing mortgages or trust deeds in the form of mortgage-backed securities ("MBS"), thereby allowing lenders to reinvest their assets into more lending and in effect increasing the number of lenders in the mortgage market by reducing the reliance on thrifts.  Defendant Fannie Mae has, from time to time, acquired promissory notes secured by mortgages or trust deeds, including those on real property parcels in the State of Oregon, which it then generally passes through to other financial institutions and investors on the secondary mortgage market through various mechanisms and with certain guarantees, if these mortgages or trust deeds subsequently go into default and become subject to foreclosure.

## GENERAL ALLEGATIONS

### 13.

On or about January 18, 2002, Plaintiff and her then husband, Michael J. Hart, acquired a parcel of real property in Josephine County, Oregon, by a Warranty Deed, as tenants by the entireties, from Virginia S. Shedden, Individually, and Virginia S. Shedden, Trustee.  This parcel of real property has a street address of 880 Fish Hatchery Road, Grants Pass, Oregon 97527 and is more particularly described in the legal description attached to the Warranty Deed, a copy of which was recorded on January 25, 2002, in the Official Records of Josephine County, Oregon, as Instrument No. 02-1954, and is attached to this Amended Complaint as Exhibit "A."

### 14.

In conjunction with the purchase of the property from Virginia S. Shedden, Plaintiff and her husband obtained a purchase money loan from Mission Hills Mortgage Corporation in the amount of $120,000, and signed a promissory note payable to Mission Hills Mortgage Corporation in this principal amount.  The promissory note provided for

**AMENDED COMPLAINT - 7**

interest at the rate of 7.625% per annum on this principal amount and monthly amortized payments over a thirty year term in the amount of $906.94 per month.  The holder or holders of this original promissory note after Mission Hills Mortgage Corporation is presently unknown to the Plaintiff.

15.

The promissory note signed by the Plaintiff and her husband for the purchase money loan with Mission Hills Mortgage Corporation was secured by a first trust deed on the property.   This first trust deed indicated that the "grantors" were Michael J. Hart and Mary Hart, husband and wife; the "trustee" was Key Title Company; and the "beneficiary" was the Defendant MERS.  Mission Hills Mortgage Corporation was indicated on this first trust deed as the "lender," a status deed which is not recognized under the Oregon Trust Deed Act, ORS 86.705, et seq.  Defendant MERS was further indicated on this first trust deed to be "acting solely as the nominee for Lender and Lender's successors and assigns."  A copy of the foregoing first trust deed on the property securing the above described promissory note was recorded in the Official Records of Josephine County, Oregon, on January 25, 2002, as Instrument No. 02-1955, and is attached to this Amended Complaint as Exhibit "B."

16.

Upon information and belief based upon general knowledge of the secondary mortgage market for Fannie Mae guaranteed loans and to be further established through discovery to be conducted in this action, Plaintiff alleges that the above referenced promissory note and the first trust deed on the property was likely thereafter sold, transferred and assigned to the Defendant Fannie Mae and that the Defendant Fannie Mae thereafter likely "securitized" and sold the right to receive income from payments on the promissory note through the issuance of one or more securities issued to one or more investors with other bundled first trust deed or mortgage loans, the identity of which

**AMENDED COMPLAINT - 8**

investors are presently unknown to Plaintiff.  Upon information and belief based upon general knowledge of the secondary mortgage market and servicing agreements typically entered into on Fannie Mae guaranteed trust deeds loans, Plaintiff alleges that Countrywide Home Loans Servicing, LP became the loan servicer on the promissory note and first trust deed loan on the property under a separate master loan servicing agreement that had been previously entered into between Mission Hills Mortgage Corporation, as seller, Defendant Fannie Mae, as buyer, and Countrywide Home Loans Servicing, LP, as servicer.  Upon information and belief based upon general knowledge of the operation of the Defendant MERS' private computerized database recording system and to be further established through discovery to be conducted in this action, Plaintiff alleges that the assignment of the promissory note and first trust deed from Mission Hills Mortgage Corporation to the Defendant Fannie Mae and thereafter to any passed through investor or investors was recorded, if at all, on the private computerized database recording system of the Defendant MERS and not in the Official Records of Josephine County, Oregon for the recordation of trust deeds and assignments of trust deeds under the Oregon Trust Deed Act.

17.

Upon information and belief based upon general knowledge of the practices of BAC Home Loans Servicing, LP and to be further established through discovery to be conducted in this action, Plaintiff alleges that following the acquisition of Countrywide Financial Corporation by Bank of America Corporation and the change of the name of Countrywide Home Loans Servicing, LP to BAC Home Loans Servicing, LP that BAC Home Loans Servicing, LP assumed the loan servicing obligations of Countrywide Home Loans Servicing, LP on the above referenced promissory note and first trust deed on the property.

/ /

**AMENDED COMPLAINT - 9**

18.

On or about October 21, 2010, an individual, Lucy Mansourian, who was identified as an Assistant Secretary of the Defendant MERS, purported signed before a notary public of the State of California, E.L. Howard, in Ventura County, California, a document entitled "Assignment of Deed of Trust," in which the Defendant MERS, as the purported beneficiary on the first trust deed on the property, purportedly granted, conveyed, assigned and transferred to "BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP," "all of the beneficial interest" under the first trust deed on the property, "together with note or notes therein described or referred to, the money due and to become due thereon, with interest."  A copy of this document entitled Assignment of Deed of Trust was recorded on October 25, 2010, in the Official Records of Josephine County, Oregon, as Document No. 2010-013783, and is attached to this Amended Complaint as Exhibit "C."

19.

Upon information and belief based upon general knowledge of the operating procedures of the Defendant ReconTrust and anticipated to be established through further discovery in this action, Plaintiff alleges that both Lucy Mansourian and E.L. Howard were employees of the Defendant ReconTrust and that the document entitled "Assignment of Deed of Trust" and attached to this Amended Complaint as Exhibit "C" was signed at the principal offices of the Defendant ReconTrust in Simi Valley, California.  Upon information and belief and anticipated to be further established through discovery to be conducted in this action, Plaintiff alleges that Lucy Mansourian was not an "Assistant Secretary" of the Defendant MERS and/or had no proper legal authority given by the Defendant MERS to execute the document entitled "Assignment of Deed of Trust," dated October 21, 2010.  Plaintiff further alleges that Defendant MERS was not the holder of the promissory note and was not the true and actual beneficiary under the

**AMENDED COMPLAINT - 10**

first trust deed on the property under the Oregon Trust Deed Act at the time of the execution of this document entitled "Assignment of Deed of Trust." As a result of the foregoing, Plaintiff alleges that the execution and recordation of the document entitled "Assignment of Deed of Trust" was a nullity and of no legal effect under Oregon law.

20.

On or about October 21, 2010, an individual, Lucy Mansourian, this time as an indicated "Assistant Secretary" of "BAC Home Loans Servicing LP FKA Countrywide Home Loans Servicing LP," signed a document entitled "Appointment of Successor Trustee," which document was also acknowledged before the California notary public, E.L. Howard, in Ventura County, California, on October 21, 2010. In this document entitled "Appointment of Successor Trustee," it was indicated that BAC Home Loans Servicing LP FKA Countrywide Home Loans Servicing, LP was the "present Beneficiary" under the first trust deed on the property; desired to appoint a new trustee in the place and stead of the original trustee, Key Title Company, on the first trust deed on the property; and appointed the Defendant ReconTrust, as the "successor trustee" under the first trust deed on the property. A copy of this document entitled "Appointment of Successor Trustee" was recorded in the Official Records of Josephine County, on October 25, 2010, as Document No. 2010-013784, and is attached to this Amended Complaint as Exhibit "D."

21.

Upon information and belief based upon general knowledge of the operating procedures of the Defendant ReconTrust and anticipated to be established through further discovery in this action, Plaintiff alleges that both Lucy Mansourian and E.L. Howard were employees of the Defendant ReconTrust and that the document entitled "Appointment of Successor Trustee" was signed at the principal offices of the Defendant ReconTrust in Simi Valley, California. Upon information and belief and anticipated to be

**AMENDED COMPLAINT - 11**

established through discovery to be conducted in this action, Plaintiff alleges that Lucy Mansourian was not an "Assistant Secretary" of the BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP and/or had no proper legal authority given by BAC Home Loans Servicing, LP to execute the document entitled "Appointment of Successor Trustee," dated October 21, 2010.  Plaintiff further alleges that BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP was not the true and actual beneficiary under the trust deed on the property at the time of the execution of the document entitled "Appointment of Successor Trustee," since: (a) The execution of the foregoing document entitled "Assignment of Deed of Trust," dated October 21, 2010, was a legal nullity and failed to assign the promissory note or the beneficiary interest in the first trust deed on the property to the Defendant BAC Home Loans Servicintg, LP FKA Countrywide Home Loan Servicing, LP; and/or (b) Upon information and belief based upon the normal operating procedures of BAC Home Loans Servicing, LP and anticipated to be established through discovery in this action, BAC Home Loans Servicing, LP was only the servicer of the first trust deed loan on the property.  As a result of the foregoing, Plaintiff alleges that the execution and recordation of the document entitled "Appointment of Successor Trustee" was a nullity and of no legal effect under Oregon law.

22.

On or about October 21, 2010, an individual, Karla Merida, indicated to be the "Team Member" for the Defendant ReconTrust executed a document entitled "Notice of Default and Election to Sell."  Ms. Merida's signature was also acknowledged by the California notary public, E.L. Howard, in Ventura County, California.  This document declared that there had been a default by the Plaintiff and her husband in the performance on the promissory note secured by the first trust deed on the property, by the failure to pay when due the monthly payments of $906.94 beginning July 1, 2010, plus late charges

**AMENDED COMPLAINT - 12**

of $42.47 each month beginning July 1, 2010 plus prior accrued late charges of $-127.41 (sic). Based upon this alleged default, this document sought to declare all amounts owing on the promissory note secured by the first trust deed on the property as due and payable and to commence a non-judicial, private trustee foreclosure proceeding under the advertisement and sale provisions of Oregon's Trust Deed Act and set a foreclosure sale to be held on March 4, 2011, at 10:00 a.m., inside the main lobby of the Josephine County Courthouse, in Grants Pass, Josephine County, Oregon. A copy of this document entitled "Notice of Default and Election to Sell" was recorded in the Official Records of Josephine County, on October 25, 2010, as Document No. 2010-013785, and is attached to this Amended Complaint as Exhibit "E."

23.

Upon information and belief based upon general knowledge of the operating procedures of the Defendant ReconTrust and anticipated to be further established through discovery to be taken in this action, Plaintiff alleges that the foregoing "Notice of Default and Election to Sell," dated October 21, 2010, was a legal nullity and of no legal effect, since there had not been a proper and legally effective assignment of the promissory note and beneficiary interest under the first trust deed on the property to BAC Home Loans Servicing, LP from the Defendant MERS, as alleged hereinabove, and since there had further not been a proper and legally effect appointment of the Defendant ReconTrust as the successor trustee on the first trust deed on the property, as alleged hereinabove.

24.

Notwithstanding the foregoing legal defects in the non-judicial, private trustee foreclosure proceeding sought to be commenced by the Defendant ReconTrust on the promissory note and the first trust deed on the property on October 21, 2010, Plaintiff caused a "cure" of the alleged defaults in the obligations under the promissory note secured by the first trust deed on the property to be made, as of February 15, 2011, and a

**AMENDED COMPLAINT - 13**

document entitled "Rescission of Notice of Default" was signed on this date by an individual, Daniel B. Rodriguez, identified as an "Authorized Signer" for the Defendant ReconTrust.  Mr. Rodriguez' signature was acknowledged on this document by a California notary public, K. Cisneroz, in Ventura County, California.  This "Rescission of Notice of Default" document indicated that the defaults in the obligations under the promissory note secured by the first trust deed on the property that had been the subject of the foregoing "Notice of Default and Election to Sell," recorded on October 25, 2010, in the Official Records of Josephine County, Oregon, Exhibit "E" to this Amended Complaint, "had been cured as permitted by the provision of Section 86.735, Oregon Revised Statutes" and that "notice of default has been removed, paid, and overcome so that said Trust Deed should be reinstated."  A copy of this document entitled "Rescission of Notice of Default" was recorded in the Official Records of Josephine County, on February 17, 2011, as Document No. 2011-002111, and is attached to this Amended Complaint as Exhibit "F."

25.

On or about November 7, 2011, an individual, Beverly Brooks, indicated as being an "Assistant Secretary" for the Defendant MERS, signed a document entitled "Assignment of Deed of Trust."  The signature of Beverly Brooks on this Assignment of Deed of Trust document was acknowledged by a California notary public, Jovida AlvarezDiaz, in Ventura County, California.  This document indicated that the Defendant MERS, which was indicated to be the "holder" of the first trust deed on the property, notwithstanding the fact that the prior Assignment of Deed of Trust, dated October 21, 2010, and recorded on October 25, 2010, in the Official Records of Josephine County, Oregon, as Document No. 2010-013783, which is attached to this Amended Complaint as Exhibit "C," indicates that the Defendant MERS had previously sold, transferred and assigned this same promissory note and first trust deed on the property to BAC Home

**AMENDED COMPLAINT - 14**

Loan Servicing, LP FKA Countrywide Home Loan Servicing, LP.  The "Assignment of Deed of Trust," dated November 7, 2011, also indicated the address for the Defendant MERS to be "3300 S.W. 34th Avenue, Suite 101, Ocala, FL 34474," which was a different address for the Defendant MERS than was indicated on the Assignment of Deed of Trust, dated October 21, 2010.  The Assignment of Deed of Trust, dated November 7, 2011, indicated that the Defendant MERS was granting, selling, assigning, transferring and conveying to the Defendant "Bank of America, N.A., Successor by Merger to BAC Home Loans Servicing, LP FKA  Countrywide Home Loans Servicing, LP," whose address was indicated to be "13150 World Gate Dr, Herndon, VA 20170," "all beneficial interest under" the first trust deed on the property "together with the note(s) and obligations therein described."  A copy of this document entitled Assignment of Deed of Trust was recorded in the Official Records of Josephine County, on November 19, 2011, as Document No. 2011-010670, and is attached to this Amended Complaint as Exhibit "G."

26.

Upon information and belief based upon general knowledge of the operating procedures of BAC Home Loans Servicing, LP and Countrywide Home Loans Servicing, LP prior to the merger with the Defendant B of A and anticipated to be established through further discovery in this action, Plaintiff alleges that both Beverly Books and Jovida AlvarezDiaz were employees of the Defendant B of A at the former offices of BAC Home Loans Servicing, LP and Countrywide Home Loans Servicing, LP, in Simi Valley, California, and that the document entitled Assignment of Deed of Trust, dated November 7, 2011, was signed at these offices.  Upon information and belief and anticipated to be further established through discovery to be conducted in this action, Plaintiff alleges that Beverly Brooks was not an "Assistant Secretary" of the Defendant MERS and/or had no proper legal authority given by the Defendant MERS to execute the document entitled Assignment of Deed of Trust, dated November 7, 2011.  Plaintiff

**AMENDED COMPLAINT - 15**

further alleges that Defendant MERS was not the holder of the promissory note and was not the true and actual beneficiary under the first trust deed on the property under the Oregon Trust Deed Act at the time of the execution of this document entitled Assignment of Deed of Trust.  As a result of the foregoing, the execution and recordation of the document entitled Assignment of Deed of Trust, dated November 7, 2011, was a nullity and of no legal effect under Oregon law.

27.

On or about November 28, 2011, an individual, Kimberly Sumrall, indicated to be the "Assistant Vice President," for the Defendant "Bank of America, N.A., Successor by Merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP" signed a document entitled "Appointment of Successor Trustee."  In this document, it was indicated that the Defendant B of A was the "present beneficiary" under the first trust deed on the property and desired to appoint "a new trustee in the place and stead of the original trustee," which was identified as Key Title Company.  The Defendant B of A in this Appointment of Successor Trustee document, dated November 28, 2011, appointed the Defendant NW Trustee as the "successor trustee" under the first trust deed on the property, notwithstanding the fact that BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP had previously appointed the Defendant ReconTrust as the "successor trustee" under this same first trust deed on the property pursuant to the Appointment of Successor Trustee document, dated October 21, 2010, a copy of which prior Appointment of Successor Trustee document is attached to this Amended Complaint as Exhibit "D".   A true copy of the Appointment of Successor Trustee document, dated November 28, 2011, was recorded in the Official Records of Josephine County, on December 14, 2011, as Document No. 2011-014789, and is attached to this Amended Complaint as Exhibit "H."

/ /

**AMENDED COMPLAINT - 16**

28.

Plaintiff alleges that the Defendant B of A was not the true and actual beneficiary under the trust deed on the property at the time of the execution of the document entitled Appointment of Successor Trustee document, dated November 28, 2011, since: (a) The execution of the foregoing document entitled Assignment of Deed of Trust, dated November 9, 2011, was a legal nullity and failed to assign the promissory note or the beneficiary interest in the first trust deed on the property to the Defendant B of A; and/or (b) Upon information and belief based upon the normal operating procedures of BAC Home Loans Servicing, LP prior to its merger with the Defendant B of A and anticipated to be established through further discovery in this action, Defendant B of A was only the servicer of the first trust deed loan on the property as a result of its merger with BAC Home Loans Servicing, LP, at the time of the execution of the Assignment of Deed of Trust, on November 9, 2011.  As a result of the foregoing, the execution and recordation of the document entitled Appointment of Successor Trustee, dated November 28, 2011, was a nullity and of no legal effect under Oregon law.

29.

On or about December 13, 2011, an individual, Winston Kahn, indicated to be the "Assistant Vice President" of the Defendant NW Trustee executed a document entitled "Notice of Default and Election to Sell."  Mr. Kahn's signature was acknowledged by a Washington notary public, Leah M. OConnor, in King County, Washington.  This document declared that there had been a default by the Plaintiff and her husband in the performance on the promissory note secured by the first trust deed on the property, by the failure to pay when due the monthly payments of $912.07 beginning June 1, 2011, plus late charges of $42.48 each month beginning June 16, 2011.  Based upon this alleged default, this document sought to declare all amounts owing on the promissory note secured by the first trust deed on the property as due and payable and to commence a

**AMENDED COMPLAINT - 17**

private trustee foreclosure proceeding under the non-judicial, advertisement and sale provisions of Oregon's Trust Deed Act for a foreclosure sale noticed to be held on April 24, 2012, at 10:00 a.m., inside the main lobby of the Josephine County Courthouse, in Grants Pass, Josephine County, Oregon.  A true copy of this document entitled "Notice of Default and Election to Sell" was recorded in the Official Records of Josephine County, on October 25, 2010, as Document No. 2011-014790, and is attached to this Amended Complaint as Exhibit "I."

30.

Upon information and belief based upon general knowledge of the operating procedures of the Defendant NW Trustee and anticipated to be further established through discovery to be taken in this action, Plaintiff alleges that the foregoing "Notice of Default and Election to Sell," dated December 13, 2011, was a legal nullity and of no legal effect, since there had not been a proper and legally effective assignment of the promissory note and beneficiary interest under the first trust deed on the property to the Defendant B of A from the Defendant MERS, as alleged hereinabove, and since there had further not been a proper and legally effect appointment by Defendant B of A of the Defendant NW Trustee as the successor trustee on the first trust deed on the property, as alleged hereinabove.

31.

On April 11, 2011, there was recorded in the Official Records of Josephine County, Oregon, as Document No. 2012-004368, a Recording Cover Sheet, pursuant to ORS 205.234, and the following documents in an apparent attempt by the Defendant NW Trustee to comply with the requirements under Oregon law for the recording of a number of documents prior to the conducting of a non-judicial, private trustee foreclosure sale under the provisions of ORS 86.735, 86.737, and 86.750 of the Oregon Trust Deed Act then in effect, to-wit:

Affidavit of Mailing - Notice of Foreclosure;

**AMENDED COMPLAINT - 18**

Notice of Foreclosure;

Affidavit of No Timely Receipt of Request for Loan Modification Meeting Under ORS 86.737;

Trustee's Notice of Sale;

FEI, LLC Affidavit of Posting and Service; and

Affidavit of Publication.

A copy of the Recording Cover Sheet and the foregoing documents so recorded is attached to this Amended Complaint as Exhibit "J."

32.

A review of the documents recorded on April 11, 2012 (Exhibit "J") by the Defendant NW Trustee in an apparent attempt to comply with the requirements of ORS 86.735, 86.737 and 86.750 of the Oregon Trust Deed Act then in effect indicates that the following defects in the non-judicial, private trustee foreclosure procedures on the first trust deed on the property occurred with regard to the manner and method of service of notices, the contents of notices, or as to other identified problems in complying with the legal requirements of Oregon law in the holding of a non-judicial, private trustee foreclosure sale under the advertisement and sale provisions of the Oregon Trust Deed Act, to-wit:

1.    The Notice of Foreclosure form utilized by the Defendant NW Trustee was not in compliance with the requirements of the Oregon Trust Deed Act and administrative rules adopted to implement the then provisions of ORS 86.737, as of the date of the alleged service of this Notice of Foreclosure, in that it did not identify the trustee and contain the signature of the trustee at the bottom of the form;

2.    The Loan Modification/Meeting Request Form submitted with the Notice of Foreclosure form did not provide for the return of the Loan Modification/Meeting Request Form to the lender on the first trust deed on the property; and

**AMENDED COMPLAINT - 19**

3.    The Affidavit of No Timely Receipt of Request for Loan Modification/Meeting Under ORS 86.737 did not comply with the requirements of ORS 86.737 then in effect since the Affidavit was not prepared by the beneficiary on the trust deed or the agent of the beneficiary (which agent could not properly be the trustee, Defendant NW Trustee), and since the notary acknowledgement on this affidavit failed to comply with Oregon law for the acknowledgement of a signature by an individual signing an affidavit in a representative capacity and was not subject to proper recordation in the Official Records of Josephine County, as required by the provisions of ORS 86.735, 86.737 and 86.750 then in effect.

33.

On or about April 17, 2012, an individual, Monica Gradinam, signed a document entitled "Affidavit of Supplemental Mailing of Trustee's Notice of Sale." The signature of Ms. Gradinam on this document was acknowledged before a Washington notary public, Myrtle Louise Walvatne, in King County, Washington, on April 17, 2012. This document indicated that an attached "notice of sale" was "given under the terms of that certain deed described in said notice" and that a true copy of this notice was mailed by both first class and certified mail with return receipt requested to the following individuals or their legal representatives (where so indicated), on April 17, 2012, from the United States post office in Bellevue, Washington, to-wit: Gordon Edwards c/o Mark Lansing, P.C., Mark Lansing Attorney at Law, in Grants Pass, Oregon; John Kroger, Attorney General, Oregon Department of Justice, in Salem, Oregon; Department of Revenue, in Salem, Oregon; and Department of Revenue, PTAC Collections, in Salem, Oregon. A copy of the Affidavit of Supplemental Mailing Trustee's Notice of Sale and the attached referenced "notice" was recorded in the Official Records of Josephine County, on April 20, 2012, as Document No. 2012-004821, and is attached to this Amended Complaint as Exhibit "K".

/ /

**AMENDED COMPLAINT - 20**

34.

The non-judicial, private trustee foreclosure sale of the property under the advertisement and sale provisions of the Oregon Trust Deed Act, was not held on April 24, 2012, at 10:00 a.m., inside the main lobby of the Josephine County Courthouse, in Grants Pass, Josephine County, Oregon, as had been previously noticed in the Notice of Default and Election to Sell, dated December 13, 2011, attached to this Amended Complaint as Exhibit "I ," and in the Trustee's Notice of Sale, dated December 15, 2011, attached to this Amended Complaint as one of the documents recorded on April 11, 2012, in the Official Records of Josephine County, Oregon, as Document No. 2012-004368, and part of Exhibit "J".  This non-judicial, private trustee foreclosure sale of the property under the advertisement and sale provisions of the Oregon Trust Deed Act was postponed for reasons presently unknown to the Plaintiff.   Upon information and belief and anticipated to be further established through discovery to be conducted in this action, Plaintiff alleges that there was no public pronouncement, at the time and place of the previously noticed private trustee foreclosure sale on April 24, 2012, under the advertisement and sale provisions of the Oregon Trust Deed Act, in which the date, time and location for the postponed non-judicial, private trustee foreclosure sale of the property was announced, as required by Oregon law, in order to allow a proper postpone of the non-judicial, private trustee foreclosure sale of the property.

35.

On or about May 14, 2012, at 10:00 a.m., a non-judicial, private trustee foreclosure sale of the property was attempted to be held by an unknown individual on behalf of the Defendant NW Trustee, at the Josephine County Courthouse, in Grants Pass, Josephine County, Oregon.  No one other than the Plaintiff, her friends, and the individual attempting to conduct the non-judicial, private trustee foreclosure sale was present at the time and place of this purported public auction of the property.  The individual attempting to conduct the

**AMENDED COMPLAINT - 21**

non-judicial, private trustee foreclosure sale indicated at the commencement of the purported public auction that there had been a credit bid of $114,922.06 made on behalf of the Defendant Fannie Mae, which was the only bid indicated as being made on the property. Upon information and belief and anticipated to be further established through discovery to be conducted in this action, the Defendant Fannie Mae was not present at the time and place of the non-judicial, private trustee foreclosure sale attempted to be held on May 14, 2012 and thus did not make a "cash bid" for the property at this attempted private trustee foreclosure sale.

36.

Unless the Defendant Fannie Mae was the holder of the promissory note and beneficiary interest in the first trust deed on the property, it did not have the legal right nor the legal ability to make a credit bid on the property at the non-judicial, private trustee foreclosure sale held on May 14, 2012 under the provisions of Oregon law and the Oregon Trust Deed Act.  If the Defendant Fannie Mae was the holder of the promissory note and beneficiary interest under the first trust deed on the property at the time of the private trustee foreclosure sale on May 14, 2012, it failed to cause the assignment of the promissory note and beneficiary interest under the first trust deed on the property to it to be recorded in the Official Records of Josephine County, Oregon, before the holding of the non-judicial, private trustee foreclosure sale, as required by ORS 86.750 of the Oregon Trust Deed Act. As a result, in addition to all of the foregoing material defects and failures to comply with Oregon law and the Oregon Trust Deed Act with regard to the attempted non-judicial, private trustee foreclosure sale of the property under the advertisement and sale provisions of the Oregon Trust Deed Act, as alleged hereinabove, the purported foreclosure sale to the Defendant Fannie Mae at the attempted non-judicial, private trustee foreclosure sale, on May 14, 2012, was void and of no legal effect.

/ /

**AMENDED COMPLAINT - 22**

37.

On or about May 18, 2012, an individual, Jeff Stenman, indicated to be the "Assistant Vice President" of the Defendant NW Trustee signed a document entitled "Trustee's Deed." The signature of Mr. Stenman on this document was acknowledged by Penni K. Warren, a Washing notary public, in King County, Washington.  In this "Trustee's Deed," the Defendant NW Trustee sought to convey to the Defendant Fannie Mae the property, as a result of the Defendant Fannie Mae's purported "cash bid" made on the property at the above referenced attempted non-judicial, private trustee foreclosure sale, on May 14, 2012, at the Josephine County Courthouse, in Grants Pass, Josephine County, Oregon.  A true copy of the "Trustee's Deed," dated May 18, 2012, and recorded in the Official Records of Josephine County, Oregon, on June 11, 2012, as Document No. 2012-007052, is attached to this Amended Complaint as Exhibit "L."

38.

Upon information and belief and anticipated to be established through further discovery in this action, Plaintiff alleges that the Defendant Fannie Mae made no "cash bid" at the non-judicial, private trustee foreclosure sale attempted to be held on May 14, 2012, at the Josephine County Courthouse, in Grants Pass, Josephine County, Oregon, and that the Trustee's Deed so executed and delivered to the Defendant Fannie Mae by the Defendant NW Trustee was and is a sham, a nullity, and of no legal effect under Oregon law, based upon all of the above described numerous substantive defects in the attempted non-judicial, private trustee foreclosure sale on the property under Oregon law and the provisions of the Oregon Trust Deed Act.

## FIRST CLAIM FOR RELIEF

### (Claim for Declaratory Relief and Quiet Title to Real Property Resulting from Defective Attempted Private Trustee Foreclosure Sale)

39.

Plaintiff realleges Paragraphs 1 through 38 of this Amended Complaint.

**AMENDED COMPLAINT - 23**

40.

Plaintiff alleges and contends in this claim for relief that the non-judicial, private trustee foreclosure sale attempted to be held on May 14, 2012, at 10:00 a.m., at the Josephine County Courthouse, in Grants Pass, Josephine County, Oregon, on the property subject to the first trust deed, was legally void and of no legal effect, and that it did not cause the fee simple ownership interests of the Plaintiff in the property to be foreclosed. Plaintiff further alleges and contends in this claim for relief that she has a present right to immediate and continued possession of the property that is superior to the interests of the Defendant Fannie Mae or any of the Defendants in the property, and that this Court should enter a permanent injunction precluding the Defendant Fannie Mae and the other Defendants, their employees, agents, and attorneys, from interfering with the Plaintiff's right to immediate and continued possession of the property.

41.

On information and belief and anticipated to be established through further discovery in this action, Plaintiff alleges that the Defendants dispute that the attempted non-judicial, private trustee foreclosure sale of the property, on May 14, 2012, at 10:00 a.m., at the Josephine County Courthouse, in Grants Pass, Josephine County, Oregon, was legally void and of no legal effective.  On information and belief and anticipated to be established through further discovery in this action, Plaintiff further alleges that the Defendants contend that the attempted non-judicial, private trustee foreclosure sale of the property subject to the first trust deed on May 14, 2012 was legally proper and validly foreclosed all of the interests of the Plaintiff and her former husband in the property.  On information and belief and anticipated to be established through further discovery in this action, Plaintiff further alleges that the Defendants contend that the Defendant Fannie Mae is entitled to possession of the property as the successful bidder and purchaser of the property at the non-judicial, private trustee foreclosure sale held on May 14, 2012, as evidenced by the Trustee's Deed, dated

**AMENDED COMPLAINT - 24**

May 18, 2012, a copy of which is attached to this Amended Complaint as Exhibit "L".

42.

Plaintiff has been required to retain an attorney to prosecute this declaratory relief action on her behalf.  Plaintiff alleges, upon information and belief and anticipated to be established through further discovery in this action, that the promissory note and the first trust deed contain provisions providing that Mission Hills Mortgage Corporation or its successors or assigns holding the promissory note and the beneficiary interest under the trust deed were authorized to recover the holder's reasonable attorney fees and costs incurred in the exercise of any remedy available to Mission Hills Mortgage Corporation or its successors or assigns under the promissory note and/or first trust deed, including any reasonable attorney fees and costs incurred on appeal and for any title evidence.  Plaintiff is entitled to recover his reasonable attorney fees and costs incurred in this action from the Defendant Pacific Trust Bank, the apparent current successor in interest to Mission Hills Mortgage Company, or from any other Defendant determined by the Court to now hold the promissory note and beneficiary interest under the first trust deed, including any reasonable attorney fees and costs for any title evidence required for the prosecution of the Plaintiff's claim in this action, under the reciprocal provisions of ORS 20.096, based upon the breach of the implied covenant of good faith and fair dealing in the promissory note and first trust deed, which require the compliance by such Defendant(s) with the provisions of the Oregon Trust Deed Act in the conducting of any non-judicial, private trustee foreclosure sale of real property in the State of Oregon.

## COUNT ONE

### (Federal Declaratory Relief Act, 29 U.S.C. §§ 2201, et seq.)

43.

A concrete controversy exists between the Plaintiff and the Defendants, which this Court has jurisdiction and should determine under the Federal Declaratory Relief Act, 29

**AMENDED COMPLAINT - 25**

U.S.C. §§ 2201, <u>et</u> <u>seq</u>, as sought and prayed for by the Plaintiff.

<strong>COUNT TWO</strong>

44.

A concrete controversy exists between the Plaintiff and the Defendants, which this Court has jurisdiction and should determine under the Oregon Uniform Declaratory Judgments Act, ORS 28.010, <u>et</u> <u>seq</u>, as sought and prayed for by the Plaintiff.

**WHEREFORE**, Plaintiff prays that a declaratory judgment be entered in this action against the Defendants, and each of them, as follows:

1.  Declaring that the attempted non-judicial, private trustee foreclosure sale on May 14, 2012, at the Josephine County Courthouse, Grants Pass, Josephine County, Oregon, of the property that is the subject of the first trust deed at issue in this action, was void and of no legal effect, and did not cause a foreclosure of the fee simple ownership interests of the Plaintiff in the property;

2.  Declaring that Plaintiff is entitled to immediate and continued possession of the property and that this right to possession is superior to the claims of the Defendant Fannie Mae and any of the other Defendants;

3.  Entering a permanent injunction against the Defendant Fannie Mae and the other Defendants, their employees, agents, and attorneys enjoining these Defendants from interfering with the Plaintiff's right to obtain and maintain possession of the property;

4.  Awarding a monetary judgment to the Plaintiff against the Defendant Pacific Trust Bank and/or any other Defendant determined by the Court to hold the promissory note and beneficiary interest under the first trust deed, jointly and severally, for Plaintiff's reasonable attorney fees and costs, including any reasonable attorney fees and costs incurred by the Plaintiff for any title evidence, under the reciprocal provisions of ORS 20.096, and based upon the breach by these Defendants of the implied covenant of good faith and fair dealing in the promissory note and first trust deed on the property requiring compliance with the

**AMENDED COMPLAINT - 26**

provisions of the Oregon Trust Deed Act in the conducting of any non-judicial, private trustee foreclosure sale of real property in the State of Oregon;

  5.  For such other and further equitable relief that the Court may find necessary and proper.

  **DATED** this   19th   of September, 2012.

**G. JEFFERSON CAMPBELL, JR., P.C.**

 /s/ J. Campbell              
G. Jefferson Campbell, Jr., OSB #750611
Of Attorneys for Plaintiff

**AMENDED COMPLAINT - 27**

INSTRUMENT  **02-1954**  JAN 2 5 2002
Date: 1/25/02    # Pages: 3

After Recording Return To:
Key Title Company
744 NE 7th Street
P.O. Box 1960
Grants Pass OR 975260167

Title Order No. 26-33332
Escrow No. 26-33332

Send Tax Statements To:
Michael J. Hart
Mary A. Hart
555 NE F Street Ste B
Grants Pass OR 97526

Tax Account No. R325049
370614 1100

26. 33332 HP
37. 6-14  1100

**WARRANTY DEED**
(ORS 93.850)

**Virginia S. Shedden, Individually and Virginia S. Shedden, Trustee, , Grantor,** conveys and
warrants to **Michael J. Hart and Mary A. Hart, as tenants by the entirety, Grantee,** the
following described real property free of encumbrances except as specifically set forth herein:

See Exhibit 'A' attached hereto and by reference made a part hereof.

THIS INSTRUMENT WILL NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS
INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS.
BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE
TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY
PLANNING DEPARTMENT TO VERIFY APPROVED USES AND TO DETERMINE ANY
LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES AS DEFINED IN ORS
30.930.

The true consideration for this conveyance is $150,000.00.

Dated this 18 day of January, 2002

_____        _____
Virginia S. Shedden, Individually         Virginia S. Shedden, Trustee

State of OR, County of Josephine    )ss.

This instrument was acknowledged before me on ____4/18/____, 2002
by Virginia S. Shedden, Individually and Virginia S. Shedden, Trustee.



_____   My commission expires: _____
Notary Public

OFFICIAL SEAL
LINDA R DUNCAN
NOTARY PUBLIC - OREGON
COMMISSION NO. 313585
MY COMMISSION EXPIRES JUNE 15, 2002

Page 1

*Description: Josephine,OR Document - Year.DocID(Up to 10/20/04) 2002.1954 Page: 1 of 3*
*Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit A - 1**

Title No. 26-33332        Escrow No. 26-33332

## EXHIBIT 'A'

### Legal Description:

PARCEL 1: Beginning at the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon; thence South along the West line of said Section 1155 feet to the North line of the land described in Volume 172, Page 74, Josephine County Deed Records; thence East 751 feet to an iron pipe; thence South 165 feet to the South line of the North half of the Northwest Quarter of said Section 14; thence East 433.5 feet; thence North 46° East 192 feet; thence North 36° West 342 feet to the South bank of the Murphy Ditch; thence South 63°26' West 279.5 feet; thence North 1025 feet to the North line of said Section 14; thence West 874.5 feet to the point of beginning. LESS AND EXCEPTING: Commencing at the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon; thence running South along the section line 1155 feet; thence East 751 feet; thence South 165 feet to the true point of beginning; thence North 115 feet; thence Southeasterly 44 feet to a point on the County Road which is 106 feet Northeasterly from the true point of beginning; thence Southwesterly 106 feet to the true point of beginning.

PARCEL 2: Commencing 1155 feet South and 751 feet East of the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon, which is the true point of beginning; thence South 50 feet; thence in a Northwesterly direction 158 feet to a point which is West 150 feet from said true point of beginning; thence East 150 feet to the true point of beginning.

### Subject to:

The assessment roll and tax roll discloses that the premises herein described were specially assessed as Forest Land.  If the land becomes disqualified for the special assessment under the statute, an additional tax may be levied for previous years in which the land was subject to the special land use assessment.

Regulations, including levies, assessments, water and irrigation rights and easements for ditches and canals of Murphy Ditch Association.

The rights of the public in and to that portion of the premises herein described lying within the limits of public roads, streets and highways.

An Easement created by instrument, including the terms and provisions thereof,
In favor of:            Murphy Ditch Company
Recorded:              March 2, 1904
Volume:            24        Page: 227
in Josephine County, Oregon.

An Easement created by instrument, including the terms and provisions thereof,
In favor of:            The California Oregon Power Company
For:              Public Utilities
Recorded:            September 14, 1934
Volume:            77        Page: 481
in Josephine County, Oregon.

An Easement created by instrument, including the terms and provisions thereof,
In favor of:            The Pacific Telephone and Telegraph Company and California
                        Oregon Power Company
For:            public utilities
Recorded:            July 19, 1947
Volume:            132        Page: 322
in Josephine County, Oregon.

"Water Transportation Agreement", including the terms and provisions thereof,
Recorded:            May 29, 1967
Volume:            254        Page: 682
Records of Josephine County, Oregon.

Page 2

*Description: Josephine,OR Document - Year.DocID(Up to 10/20/04) 2002.1954 Page: 2 of 3*
*Order: deeds Comment:*

PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit A - 2**

Title No. 26-33332          Escrow No. 26-33332

③

"Boundary Agreement", including the terms and provisions thereof,
Recorded:              January 29, 1985
Instrument No.:        85-01060
Records of Josephine County, Oregon.

"Water Transportation Agreement", including the terms and provisions thereof,
Recorded:              December 2, 1986
Instrument No.:        86-17007
Records of Josephine County, Oregon.

"Easement Agreement", including the terms and provisions thereof,
Recorded:              May 7, 1987
Instrument No.:        87-06195
Records of Josephine County, Oregon.

INSTRUMENT **02 – 1954**

STATE OF OREGON
COUNTY OF JOSEPHINE

I, County Clerk and ex-officio Recorder of
Conveyances, in and for said County, do
hereby certify that the within instrument was
received for record and recorded at

Date: 1/25/02   Time: 2:44 PM
in the Josephine County Book of Records.
GEORGETTE BROWN, COUNTY CLERK
By Deputy: [signature]
# Pages: 3      Fee: $26.00
Hand Returned [X]   Mailed [ ]   Hold [ ]

Page 3

PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit A - 3**

After Recording Return To:

Mission Hills Mortgage Corporation
1403 N TUSTIN AVE, STE 280
SANTA ANA, CA 92705

Loan Number:   76011560

26·33332 HP        [Space Above This Line For Recording Data]

MIN: 100071200760115608

INSTRUMENT  **02 - 1955**    JAN 2 5 2002
Date:  1/25/02   # Pages:  16

# DEED OF TRUST

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "**Security Instrument**" means this document, which is dated January 17th, 2002, together with all Riders to this document.
(B)  "**Borrower**" is
MICHAEL J HART
and MARY A HART, HUSBAND AND WIFE

Borrower is the trustor under this Security Instrument.
(C)  "**Lender**" is Mission Hills Mortgage Corporation .
Lender is a California Corporation organized and existing under the laws of            . Lender's address is
1403 N. Tustin Ave, Ste 280, Santa Ana, CA  92705.
(D)  "**Trustee**" is KEY TITLE COMPANY
(E)  "**MERS**" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the beneficiary under this Security Instrument.  MERS** is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F)  "**NOTE**" means the promissory note signed by Borrower and dated January 17th, 2002.  The Note states that Borrower owes Lender
One Hundred Twenty Thousand Dollars And 00/100      Dollars
(U.S. $   120,000.00) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than February  1st, 2032.
(G)  "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."
(H)  "**Loan**" means the debt evidenced by the Note, plus interest, any payment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I)  "**Riders**" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

| _____ | Adjustable Rate Rider | _____ | Condominium Rider | _____ | Second Home Rider |
| _____ | Balloon Rider | _____ | Planned Unit Development Rider | XX | 1-4 Family Rider |
| _____ | Biweekly Payment Rider | _____ | Other(s) [specify] | | |

OREGON - - Single Family - - Fannie Mae/Freddie Mac Uniform Instrument - MERS           Form 3038 1/01
                                                                                                      GREATLAND
ITEM 1947L1 (0011)                    *(Page 1 of 12 pages)*      To Order Call: 1-800-530-9393, Fax: 616-791-1131

*Description: Josephine,OR Document - Year.DocID(Up to 10/20/04) 2002.1955 Page: 1 of 16*
*Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit B - 1**

(J) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "**Escrow Items**" means those items that are described in Section 3.

(N) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentation of, or omissions as to, the value and/or condition of the Property.

(O) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of JOSEPHINE:

EXHIBIT A ATTACHED HERETO AND MADE A PART
HEREOF

which currently has the address of    990 FISH HATCHERY ROAD
                                       [Street]

GRANTS PASS                      Oregon        97527            ("Property Address"):
[City]                                          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and

OREGON - - Single Family - - Fannie Mae/Freddie Mac Uniform Instrument - MERS          Form 3038 1/01
                                                                                       GREATLAND
ITEM 1947L2 (0011)                      (Page 2 of 12 pages)          To Order Call: 1-800-530-9393, Fax: 616-791-1131

PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit B - 2**

3

fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices

**OREGON** - - Single Family - - Fannie Mae/Freddie Mac Uniform Instrument - MERS

ITEM 1947L3 (0011)                          *(Page 3 of 12 pages)*

Form 3038 1/01
GREATLAND
To Order Call: 1-800-530-9393, Fax: 616-791-1131

*Description: Josephine,OR Document - Year.DocID(Up to 10/20/04) 2002.1955 Page: 3 of 16*
*Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit B - 3**

of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.   Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the

OREGON - - Single Family - - Fannie Mae/Freddie Mac Uniform Instrument - MERS

ITEM 1947L4 (0011)                                       *(Page 4 of 12 pages)*

Form 3038 1/01
GREATLAND ■
To Order Call: 1-800-530-9393, Fax: 616-791-1131

Description: Josephine,OR Document - Year.DocID(Up to 10/20/04) 2002.1955 Page: 4 of 16
Order: deeds Comment:
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit B - 4**

payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

OREGON - Single Family - Fannie Mae/Freddie Mac Uniform Instrument - MERS

Form 3038 1/01
GREATLAND

ITEM 1947L5 (0011)                    *(Page 5 of 12 pages)*                    To Order Call: 1-800-530-9393, Fax: 616-791-1131

*Description: Josephine,OR Document - Year.DocID(Up to 10/20/04) 2002.1955 Page: 5 of 16*
*Order: deeds Comment:*

PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit B - 5**

**8.    Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.    Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.    Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

OREGON - - Single Family - - Fannie Mae/Freddie Mac Uniform Instrument - MERS    Form 3038 1/01

ITEM 1947L6 (0011)                      (Page 6 of 12 pages)          GREATLAND
                                                        To Order Call: 1-800-530-9393, Fax: 616-791-1131

Description: Josephine,OR Document - Year.DocID(Up to 10/20/04) 2002.1955 Page: 6 of 16
Order: deeds Comment:
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit B - 6**

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance  premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  Borrower Not Released; Forbearance By Lender Not a Waiver.  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in

OREGON - - Single Family - - Fannie Mae/Freddie Mac Uniform Instrument - MERS

Form 3038 1/01
GREATLAND

ITEM 1947L7 (0011)            *(Page 7 of 12 pages)*            To Order Call: 1-800-530-9393, Fax: 616-791-1131

Description: Josephine,OR Document - Year.DocID(Up to 10/20/04) 2002.1955 Page: 7 of 16
Order: deeds Comment:
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit B - 7**

amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signers consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

OREGON - - Single Family - - Fannie Mae/Freddie Mac Uniform Instrument - MERS

Form 3038 1/01
GREATLAND

ITEM 1947L8 (0011)                    (Page 8 of 12 pages)              To Order Call: 1-800-530-9393, Fax: 616-791-1131

Description: Josephine,OR Document - Year.DocID(Up to 10/20/04) 2002.1955 Page: 8 of 16
Order: deeds Comment:
PDF created with pdfFactory trial version www.pdffactory.com

Exhibit B - 8

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

OREGON - - Single Family - - Fannie Mae/Freddie Mac Uniform Instrument - MERS

Form 3038 1/01
GREATLAND

ITEM 1947L9 (0011)          *(Page 9 of 12 pages)*          To Order Call: 1-800-530-9393, Fax: 616-791-1131

*Description: Josephine,OR Document - Year.DocID(Up to 10/20/04) 2002.1955 Page: 9 of 16
Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit B - 9**

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by Applicable Law.

**25. Attorneys' Fees.** As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

**26. Protective Advances.** This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

OREGON - - Single Family - - Fannie Mae/Freddie Mac Uniform Instrument - MERS

ITEM 1947L10 (0011)                    (Page 10 of 12 pages)

Form 3038 1/01
GREATLAND
To Order Call: 1-800-530-9393, Fax: 616-791-1131

*Description: Josephine,OR Document - Year.DocID(Up to 10/20/04) 2002.1955 Page: 10 of 16
Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit B - 10**

**27. Required Evidence of Property Insurance.**

### WARNING

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

**OREGON** - - Single Family - - Fannie Mae/Freddie Mac Uniform Instrument - MERS

Form 3038 1/01

GREATLAND

ITEM 1947L11 (0011)　　　　　　*(Page 11 of 12 pages)*　　To Order Call: 1-800-530-9393, Fax: 616-791-1131

*Description: Josephine,OR Document - Year.DocID(Up to 10/20/04) 2002.1955 Page: 11 of 16*
*Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit B - 11**

12

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
MICHAEL J HART        -Borrower

_____ (Seal)
MARY A HART           -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

Witness: _____

Witness: _____

State of Oregon)
County of    Josephine        )

   This instrument was acknowledged before me on   1-28-02      (date) by
MICHAEL J HART
and MARY A HART, HUSBAND AND WIFE

                                           (person[s] acknowledging).

_____
                                    Notary Public for Oregon

**OFFICIAL SEAL**
**HEIDI PROVOST**
**NOTARY PUBLIC - OREGON**
**COMMISSION NO. 338008**
**MY COMMISSION EXPIRES AUG. 30, 2004**

My commission expires:

OREGON - - Single Family - - Fannie Mae/Freddie Mac Uniform Instrument - MERS          Form 3038 1/01
                                                                                        GREATLAND
ITEM 1947L12 (0011)              *(Page 12 of 12 pages)*     To Order Call: 1-800-530-9393, Fax: 616-791-1131

*Description: Josephine,OR Document - Year.DocID(Up to 10/20/04) 2002.1955 Page: 12 of 16
Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

Exhibit B - 12

# 1-4 FAMILY RIDER
### (Assignment of Rents)

Loan Number: 76011560

THIS 1-4 FAMILY RIDER is made this **17th** day of **January, 2002** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

Mission Hills Mortgage Corporation, A California Corporation

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

990 FISH HATCHERY ROAD, GRANTS PASS, OR 97527
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases

MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3170 1/01

GREATLAND ■
ITEM 1790L1 (0011)                          (Page 1 of 3 pages)                    To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

Description: Josephine,OR Document - Year.DocID(Up to 10/20/04) 2002.1955 Page: 13 of 16
Order: deeds Comment:
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit B - 13**

of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3170 1/01

ITEM 1790L2 (0011)          *(Page 2 of 3 pages)*          GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

*Description: Josephine,OR Document - Year.DocID(Up to 10/20/04) 2002.1955 Page: 14 of 16*
*Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit B - 14**

15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 through 3 of this 1-4 Family Rider.

_____ (Seal)
MICHAEL J HART                -Borrower

_____ (Seal)
MARY A HART                      -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

WITNESS: _____

MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3170 1/01

ITEM 1790L3 (0011)                    (Page 3 of 3 pages)                      GREATLAND ■
                                                                              To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

Description: Josephine,OR Document - Year.DocID(Up to 10/20/04) 2002.1955 Page: 15 of 16
Order: deeds Comment:
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit B - 15**



PARCEL 1: Beginning at the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon; thence South along the West line of said Section 1155 feet to the North line of the land described in Volume 172, Page 74, Josephine County Deed Records; thence East 751 feet to an iron pipe; thence South 165 feet to the South line of the North half of the Northwest Quarter of said Section 14; thence East 433.5 feet; thence North 46° East 192 feet; thence North 36° West 342 feet to the South bank of the Murphy Ditch; thence South 63°26' West 279.5 feet; thence North 1025 feet to the North line of said Section 14; thence West 874.5 feet to the point of beginning. LESS AND EXCEPTING: Commencing at the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon; thence running South along the section line 1155 feet; thence East 751 feet; thence South 165 feet to the true point of beginning; thence North 115 feet; thence Southeasterly 44 feet to a point on the County Road which is 106 feet Northeasterly from the true point of beginning; thence Southwesterly 106 feet to the true point of beginning.

PARCEL 2: Commencing 1155 feet South and 751 feet East of the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon, which is the true point of beginning; thence South 50 feet; thence in a Northwesterly direction 158 feet to a point which is West 150 feet from said true point of beginning; thence East 150 feet to the true point of beginning.

INSTRUMENT 02 - 1955

STATE OF OREGON
COUNTY OF JOSEPHINE

I, County Clerk and ex-officio Recorder of Conveyances, in and for said County, do hereby certify that the within instrument was received for record and recorded at

Date: 1/25/02   Time: 2:44 PM

in the Josephine County Book of Records.
GEORGETTE BROWN, COUNTY CLERK

By Deputy: _____

# Pages: 16    Fee: $91.00

Hand Returned ☐    Mailed ☒    Hold ☐

Description: Josephine,OR Document - Year.DocID(Up to 10/20/04) 2002.1955 Page: 16 of 16
Order: deeds Comment:
PDF created with pdfFactory trial version www.pdffactory.com

Exhibit B - 16

100637954


TICOR TITLE
Accom

**AFTER RECORDING RETURN TO:**

Foreclosure Department
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
TS No. 10 -0137781



JOSEPHINE COUNTY OFFICIAL RECORDS
ART HARVEY, COUNTY CLERK **2010-013783**
MTG-ATD
Cnt=1 Pgs=1 Stn=2 RHENKELS 10/25/2010 03:31 PM
$5.00 $11.00 $15.00 $8.00 $5.00        Total:$44.00

0025942220100013783001016

I, Art Harvey, County Clerk, certify that the within document was received and duly recorded in the official records of Josephine County.

## ASSIGNMENT OF DEED OF TRUST

For Valuable Consideration, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, hereby grants, conveys, assigns, and transfers to BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP, C/O BAC HOME LOANS SERVICING, LP, 400 COUNTRYWIDE WAY  SV-35, SIMI VALLEY, CA 93065, all beneficial interest under that certain Deed of Trust, dated 01/17/2002, executed by MICHAEL J HART AND MARY A HART, HUSBAND AND WIFE, Grantor(s), to KEY TITLE COMPANY, Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, recorded on 01/25/2002 as Recorder's fee/file/instrument/microfilm/reception number 02-1955, Records of Josephine County, Oregon, describing land. There in: as more fully described in said Deed of Trust.

Together with note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated _____10/20___, 20 10

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
    Lucy Mansourian, Assistant Secretary

STATE OF     **CALIFORNIA**     )
                                              ) ss
COUNTY OF     **VENTURA**     )

On     **OCT 2 1 2010**     , before me,     E. L. Howard     , notary public, personally appeared
**Lucy Mansourian** , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public in and for the State of CALIFORNIA
Residing at _____VENTURA_____
My Commission Expires: _____AUG 2 8 2014_____

E. L. HOWARD
COMM. #1901815
Notary Public-California
VENTURA COUNTY
My Comm. Exp. AUG 28, 2014

TICOR TITLE has recorded this instrument by request as an accommodation only. and has not examined it for regularity and sufficiency or as to its effect upon the title to any real property that may be described therein.

Page 1 of 1                    ORASGN (04/10)

Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2010.13783 Page: 1 of 1
Order: deeds Comment:
PDF created with pdfFactory trial version www.pdffactory.com

Exhbit C - 1



JOSEPHINE COUNTY OFFICIAL RECORDS
ART HARVEY, COUNTY CLERK
**2010-013784**
MTG-AST
Cnt=1 Pgs=2 Stn=2 RHENKELS    10/25/2010 03:31 PM
$10.00 $11.00 $15.00 $8.00 $5.00            Total:$49.00





I, Art Harvey, County Clerk, certify that the within document was received and duly recorded in the official records of Josephine County.



Accom
100637954

APPOINTMENT OF SUCCESSOR TRUSTEE

KNOW ALL MEN BY THESE PRESENTS, that Michael J Hart And Mary A Hart, Husband And Wife, as grantor(s), and Key Title Company, as the Trustee, and Mortgage Electronic Registration Systems, Inc., is the Beneficiary under that certain Trust Deed dated 01/17/2002, and recorded 01/25/2002, as Recorder's fee/file/instrument/microfilm/reception No. 02-1955 of the Mortgage Records of Josephine County, Oregon. The undersigned, BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP, who is the present Beneficiary under said Trust Deed desires to appoint a new trustee in the place and stead of the original trustee named above;

NOW THEREFORE, in view of the premises, the undersigned, BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP, hereby appoints RECONTRUST COMPANY, N.A., whose address is 1800 Tapo Canyon Rd., CA6-914-01-94 SIMI VALLEY, CA 93063, as successor trustee under said Trust Deed, to have all the powers of said original trustee, effective immediately.

In construing this instrument, and whenever the context so requires, the singular includes the plural.

IN WITNESS WHEREOF, the undersigned Beneficiary, BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP, has executed this document. If the undersigned, BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP, is a corporation, it has caused its name to be signed and its seal affixed by an officer or other person duly authorized to do so by its board of directors.

DATED: ___10/21___, 10.        BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE
                                HOME LOANS SERVICING LP

                                By_____
                                Name:    **Lucy Mansourian**
                                Title:    **ASSISTANT SECRETARY**
                                Assistant Secretary

STATE OF ___CALIFORNIA___ )
                          ) ss.
COUNTY OF ___VENTURA___ )

On ___OCT 21 2010___, before me, ___E. L. Howard___, personally appeared **Lucy Mansourian**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public for ___CALIFORNIA___
My commission expires: ___AUG 2 8 2014___                    (SEAL)

┌─────────────────────────────────────┐
│ APPOINTMENT OF SUCCESSOR TRUSTEE     │
│ RE: Trust Deed from                  │
│ MICHAEL J HART and MARY A HART       │
│               Grantor                │
│ To                                   │
│ RECONTRUST COMPANY, N.A.             │
│       Trustee      TS No. 10 -0137781│
└─────────────────────────────────────┘

**After recording return to:**
RECONTRUST COMPANY, N.A.

TICOR TITLE has recorded this instrument by request as an accommodation only, and has not examined it for regularity and sufficiency or as to its effect upon the title to any real property that may be described therein.

E. L. HOWARD
COMM. #1901815
Notary Public-California
VENTURA COUNTY
My Comm. Exp. AUG 28, 2014

Page 1 of 2                              ORAPTOFSUC (04/10)

*Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2010.13784 Page: 1 of 2*
*Order: deeds Comment:*

PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit D - 1**



C/O RECONTRUST COMPANY, N.A.
400 COUNTRYWIDE WAY  SV-35
SIMI VALLEY, CA 93065

*ORAPTOFSUC (04/10)*

*Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2010.13784 Page: 2 of 2*
*Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit D - 2**



**TICOR TITLE**

Accom
1006379854

After recording return to:
Attn: Foreclosure Department
RECONTRUST COMPANY, N.A.
400 COUNTRYWIDE WAY SV-35
SIMI VALLEY, CA 93065

JOSEPHINE COUNTY OFFICIAL RECORDS
ART HARVEY, COUNTY CLERK          **2010-013785**
MTG-DES
Cnt=1 Pgs=3 Stn=2 RHENKELS  10/25/2010 03:31 PM
$15.00 $11.00 $15.00 $8.00 $5.00          Total:$54.00



0025942420100013785030033

I, Art Harvey, County Clerk, certify that the within document
was received and duly recorded in the official records of
Josephine County.

### NOTICE OF DEFAULT AND ELECTION TO SELL

Reference is made to that certain Trust Deed made by MICHAEL J HART AND MARY A HART, HUSBAND AND WIFE, as grantors, to KEY TITLE COMPANY, as Trustee, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, dated 01/17/2002, recorded 01/25/2002, in the mortgage records of Josephine County, Oregon, as Recorder's fee/file/instrument/microfilm/reception Number 02-1955, covering the following described real property situated in said county and state, to wit:

SEE LEGAL

PROPERTY ADDRESS: 990 FISH HATCHERY RD
GRANTS PASS, OR 97527

There is default by the grantor or other person, or by their successor in interest, owing an obligation, the performance of which is secured by said Trust Deed, or by their successor in interest, with respect to provisions therein which authorize sale in the event of default of such provision. The default for which foreclosure is made is grantors' failure to pay when due the following sums: monthly payments of $906.94 beginning 07/01/2010; plus late charges of $ 42.47 each month beginning 07/01/2010 payment plus prior accrued late charges of $-127.41; plus advances of $0.00; together with title expense, costs, trustee's fees and attorney fees incurred herein by reason of said default; and any further sums advanced by the Beneficiary for the protection of the above described real property and its interest therein.

By reason of said default, the Beneficiary has declared all sums owing on the obligation secured by said Trust Deed immediately due and payable, said sums being the following, to wit: $107,890.63 with interest thereon at the rate of 7.625 percent per annum beginning 07/01/2010 plus late charges of $ 42.47 each month beginning 07/01/2010 until paid; plus prior accrued late charges of $-127.41; plus advances of $0.00; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; and any further sums advanced by the Beneficiary for the protection of the above described real property and its interest therein.

| | |
|---|---|
| **NOTICE OF DEFAULT AND ELECTION TO SELL**<br>RE: Trust Deed from<br>**MICHAEL J HART and MARY A HART,**<br>　　　　　Grantor<br>　To<br>**RECONTRUST COMPANY, N.A.,**<br>　　　　　Trustee　　TS No. 10 -0137781 | **For Additional Information:**<br>**Please Contact**<br>**Foreclosure Department**<br>**RECONTRUST COMPANY, N.A.**<br>**RECONTRUST COMPANY, N.A.**<br>**1800 Tapo Canyon Rd., CA6-914-01-94**<br>**SIMI VALLEY, CA 93063**<br>**(800)-281-8219** |

Notice is hereby given that the Beneficiary and Trustee, by reason of said default, have elected and do hereby elect to foreclose the Trust Deed by advertisement and sale pursuant to ORS 86.705 to 86.795, and to cause to be sold at public auction to the highest bidder for cash the interest in the described property which the grantor had, or had the power to convey, at the time the grantor executed the Trust Deed, together with any interest the grantor or grantor's successors in interest acquired after the execution of the Trust Deed, to satisfy the obligations secured by the Trust Deed and the expenses of the sale, including the compensations of the Trustee as provided by law, and reasonable fees of Trustee's attorneys.

TICOR TITLE has recorded this
instrument by request as an accommodation only,
and has not examined it for regularity and sufficiency
or as to its effect upon the title to any real property
that may be described therein.

Page 1 of 2                                                    *ORNOD (01/10)*

*Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2010.13785 Page: 1 of 3*
*Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit E - 1**

2

The sale will be held at the hour of 10:00 AM , in accordance with the standard of time established by ORS 187.110 on Friday, March 04, 2011, at the following place: inside the main lobby of the Josephine County Courthouse, 500 NW 6th ( 6th and C), Grants Pass, Josephine County, OR , which is the hour, date and place last set for the sale.

Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the Trust Deed reinstated by payment to the Beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing every other default complained of herein by tendering the performance required under the obligation or Trust Deed, in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and Trust Deed, together with trustee's and attorney's fees not exceeding the amounts provided by ORS 86.753.

In constructing this notice, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other person owing an obligation, the performance of which is secured by said Trust Deed, and the words "Trustee" and "Beneficiary" include their respective successors in interest, if any.

RECONTRUST COMPANY, N.A.

Karla Merida, Team Member

STATE OF **CALIFORNIA**  )
                         ) ss.
COUNTY OF **VENTURA**    )

On **OCT 2 1 2010**, before me, E. L. Howard, notary public, personally appeared **KARLA MERIDA**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public for **CALIFORNIA**
My commission expires: **Aug 28 2014**                    (SEAL)

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER IF YOU HAVE OR ARE IN THE PROCESS OF OBTAINING DISCHARGE OF THE DEBT FROM A BANKRUPTCY COURT, THIS DOCUMENT IS NOT AN ATTEMPT TO COLLECT A DEBT, BUT ONLY ENFORCEMENT OF LIEN RIGHTS AGAINST THE PROPERTY.**



E. L. HOWARD
COMM. #1901815
Notary Public-California
VENTURA COUNTY
My Comm. Exp. AUG 28, 2014

Page 2 of 2                              *ORNOD (01/10)*

*Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2010.13785 Page: 2 of 3*
*Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit E - 2**




PARCEL 1: Beginning at the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon; thence South along the West line of said Section 1155 feet to the North line of the land described in Volume 172, Page 74, Josephine County Deed Records; thence East 751 feet to an iron pipe; thence South 165 feet to the South line of the North half of the Northwest Quarter of said Section 14; thence East 433.5 feet; thence North 46° East 192 feet; thence North 38° West 342 feet to the South bank of the Murphy Ditch; thence South 63°26' West 279.5 feet; thence North 1025 feet to the North line of said Section 14; thence West 874.5 feet to the point of beginning. LESS AND EXCEPTING: Commencing at the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon; thence running South along the section line 1155 feet; thence East 751 feet; thence South 165 feet to the true point of beginning; thence North 115 feet; thence Southeasterly 44 feet to a point on the County Road which is 106 feet Northeasterly from the true point of beginning; thence Southwesterly 106 feet to the true point of beginning.

PARCEL 2: Commencing 1155 feet South and 751 feet East of the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon, which is the true point of beginning; thence South 50 feet; thence in a Northwesterly direction 158 feet to a point which is West 150 feet from said true point of beginning; thence East 150 feet to the true point of beginning.

INSTRUMENT # 02-1955
STATE OF OREGON
COUNTY OF JOSEPHINE

I, County Clerk and ex-officio Recorder of Conveyances, in and for said County, do hereby certify that the within instrument was received for record and recorded at

Date: 1/25/02    Time: 2:44 PM

in the Josephine County Book of Records.
GEORGETTE BROWN, COUNTY CLERK

By Deputy:

# Pages: 16    Fee: $91.00

Hand Returned [X]    Mailed [ ]    Hold [ ]

PDF created with pdfFactory trial version www.pdffactory.com

Exhibit E - 3





**RECONTRUST COMPANY**
400 National way
SIMI VALLEY, CA 93065
TS No. I0 -0137781
TSG No. 100637954ORGSI

### RESCISSION OF NOTICE OF DEFAULT

Reference is made to that certain Trust Deed in which MICHAEL J HART AND MARY A HART, HUSBAND AND WIFE was grantor, KEY TITLE COMPANY was Trustee and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was beneficiary, said Trust Deed recorded on 01/25/2002 or as fee/file/instrument/microfilm/section No. 02-1955 of the mortgage of records of Josephine County, Oregon and conveyed to the said Trustee the following real property situated in said county:

SEE LEGAL

Commonly Known As:    990 FISH HATCHERY RD
                       GRANTS PASS, OR 97527

A notice of grantor's default under said Trust Deed, containing the beneficiary's or Trustee's election to sell all or part of the above described real property to satisfy grantor's secured by said Trust Deed was recorded on 10/25/2010, in said mortgage records or as fee/file/instrument/microfilm No. 2010-013785: thereafter by reason of the default being cured as permitted by the provision of Section 86.753, Oregon Revised Statutes, the default described in said notice of default has been removed, paid, and overcome so that said Trust Deed should be reinstated.

Now therefore, notice is hereby given that the undersigned Trustee does hereby rescind, cancel, and withdraw said notice of default and election to sell; said Trust Deed and all obligations secured thereby hereby are reinstated and shall be and remain in force and effect the same as if no acceleration had occurred and as if said notice of default had not been given; it being understood, however, that this rescission shall not be construed as waiving or affecting any breach or default (past, present or future) under said Trust Deed or as impairing any right or remedy thereunder, or as modifying or altering in any respect of the terms, covenants, conditions or obligations thereof, but is and shall be deemed to be only an election without prejudice, not to cause a sale to be made pursuant to said notice so recorded.

IN WITNESS WHEREOF, the undersigned Trustee has hereunto set his hand and seal:  if the undersigned is a corporation, it has caused its corporate name to be signed and its corporate seal to be affixed hereunto by its officers duly authorized thereunto by order of its Board of Directors.

.............. recorded this
........... by request as an accommodation only,
..... not examined it for regularity and sufficiency
... to its effect upon the title to any real property
...... the location therein

**JOSEPHINE COUNTY OFFICIAL RECORDS**
ART HARVEY, COUNTY CLERK    **2011-002111**
MTG-RTS
Cnt=1 Pgs=3 Stn=2 RHENKELS  02/17/2011 03:18 PM
$15.00 $11.00 $15.00 $8.00 $5.00          Total:$54.00

0026605220110021110030038

I, Art Harvey, County Clerk, certify that the within document was received and duly recorded in the official records of Josephine County.

ORRESCISNNOD (07/07)

Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2011.2111 Page: 1 of 3
Order: deeds Comment:
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit F - 1**

2

DATED: _2-15-11_____

State of ____CALIFORNIA____ )
County of ____VENTURA_____ ) ss.

On _2-15-11_____, before me, _____K. CISNEROZ_____, notary public, personally appeared
_____, personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

RECONTRUST COMPANY, N.A.

_____2-15-11_____
**DANIEL B RODRIGUEZ    Authorized Signer**

WITNESS my hand and official seal.

_____

```
┌─────────────────────────┐
│       K. CISNEROZ       │
│  Commission # 1818170   │
│  Notary Public - California │
│    Los Angeles County   │
│  My Comm. Expires Oct 18, 2012 │
└─────────────────────────┘
```

Notary Public in and for the State of ____CALIFORNIA____
Residing at ____VENTURA____    ____LOS ANGELES____
My Commission Expires: __10-18-12__

Page 2 of 2                    ORRESCISNNOD (07/07)

Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2011.2111 Page: 2 of 3
Order: deeds Comment:
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit F - 2**

③

ORDER NO: 100637954

POLICY NO: OR2052-10-100637954-2010.2708637-81885352

## EXHIBIT "A"

REF. NO.: 10-0137781

PARCEL 1: BEGINNING AT THE NORTHWEST CORNER OF SECTION 14, TOWNSHIP 37 SOUTH, RANGE 6 WEST OF THE WILLAMETTE MERIDIAN, JOSEPHINE COUNTY, OREGON; THENCE SOUTH ALONG THE WEST LINE OF SAID SECTION 1155 FEET TO THE NORTH LINE OF THE LAND DESCRIBED IN VOLUME 172, PAGE 74, JOSEPHINE COUNTY DEED RECORDS; THENCE EAST 751 FEET TO AN IRON PIPE; THENCE SOUTH 165 FEET TO THE SOUTH LINE OF THE NORTH HALF OF THE NORTHWEST QUARTER OF SAID SECTION 14; THENCE EAST 433.5 FEET; THENCE NORTH 46° EAST 192 FEET; THENCE NORTH 36° WEST 342 FEET TO THE SOUTH BANK OF THE MURPHY DITCH; THENCE SOUTH 63° 26' WEST 279.5 FEET; THENCE NORTH 102.5 FEET TO THE NORTH LINE OF SAID SECTION 14; THENCE WEST 874.5 FEET TO THE POINT OF BEGINNING. LESS AND EXCEPTING: COMMENCING AT THE NORTHWEST CORNER OF SECTION 14, TOWNSHIP 37 SOUTH, RANGE 6 WEST OF THE WILLAMETTE MERIDIAN, JOSEPHINE COUNTY, OREGON; THENCE RUNNING SOUTH ALONG THE SECTION LINE 1155 FEET; THENCE EAST 751 FEET; THENCE SOUTH 165 FEET TO THE TRUE POINT OF BEGINNING; THENCE NORTH 115 FEET; THENCE SOUTHEASTERLY 44 FEET TO A POINT ON THE COUNTY ROAD WHICH IS 106 FEET NORTHEASTERLY FROM THE TRUE POINT OF BEGINNING; THENCE SOUTHWESTERLY 106 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 2: COMMENCING 1155 FEET SOUTH AND 751 FEET EAST OF THE NORTHWEST CORNER OF SECTION 14, TOWNSHIP 37 SOUTH, RANGE 6 WEST OF THE WILLAMETTE MERIDIAN, JOSEPHINE COUNTY, OREGON, WHICH IS THE TRUE POINT OF BEGINNING; THENCE SOUTH 50 FEET; THENCE IN A NORTHWESTERLY DIRECTION 158 FEET TO A POINT WHICH IS WEST 150 FEET FROM SAID TRUE POINT OF BEGINNING; THENCE EAST 150 FEET TO THE TRUE POINT OF BEGINNING.

FORM 11954 /2708637
(Rev. 3/94)
Printed (8/99)

Fidelity National Title Insurance Company

9

GUARANTEE – COMBINATION FORM

OREGON

54

Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2011.2111 Page: 3 of 3
Order: deeds Comment:
PDF created with pdfFactory trial version www.pdffactory.com

Exhibit F - 3

Recording Requested By:
Bank of America
Prepared By: Mary Ann Hierman
888-603-9011
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

DocID#    997323740628973
Tax ID:    R325049
Property Address:
990 Fish Hatchery Rd
Grants Pass, OR 97527-7500
ORO-ADT 15368190        9/6/2011

**JOSEPHINE COUNTY OFFICIAL RECORDS**
ART HARVEY, COUNTY CLERK    **2011-010670**
MTG-ATD
Cnt=1  Pgs=1  Stn=2  RHENKELS    09/19/2011 02:03 PM
$5.00 $11.00 $15.00 $8.00 $5.00        Total:$44.00

0027690320110010670001001 9

I, Art Harvey, County Clerk, certify that the within document
was received and duly recorded in the official records of
Josephine County.

This space for Recorder's use

MIN #:  10007120076011 5608        MERS Phone #:  888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474 does hereby grant, sell, assign, transfer and convey unto BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP whose address is 13150 WORLD GATE DR, HERNDON, VA 20170 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:        **MISSION HILLS MORTGAGE CORPORATION**
Original Borrower(s):    **MICHAEL J HART AND MARY A HART, HUSBAND AND WIFE**
Original Trustee:        **KEY TITLE COMPANY**
Date of Deed of Trust: **1/17/2002**    Original Loan Amount: **$120,000.00**
Recorded in Josephine County,OR on: **1/25/2002, book N/A, page N/A** and instrument number **02-1955**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
9/07/11

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By: _____
Beverly Brooks, Assistant Secretary

State of California
County of Ventura

On 9/07/2011 before me, _____Jovida AlvarezDiaz_____, Notary Public, personally appeared Beverly Brooks, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: _____    (Seal)
        Jovida AlvarezDiaz
My Commission Expires: 1-20-2014

JOVIDA ALVAREZ DIAZ
Commission # 1877678
Notary Public - California
Los Angeles County
My Comm. Expires Jan 20, 2014

PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit G - 1**

*II* ①

JOSEPHINE COUNTY OFFICIAL RECORDS
ART HARVEY, COUNTY CLERK **2011-014789**
This space
MTG-AST
Cnt=1 Pgs=2 Stn=3 TMORRIS    12/14/2011 02:44 PM
$10.00 $11.00 $15.00 $8.00 $5.00    Total:$49.00

00281798201100147890020028

I, Art Harvey, County Clerk, certify that the within document
was received and duly recorded in the official records of
Josephine County.



## Josephine County Clerk
## & Recorder's Office

*49-*

# CERTIFICATE
# PAGE

## This page must be included
## if document is re-recorded.

## <u>DO NOT</u> remove from original document.

*PA1785306TSG*

Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2011.14789 Page: 1 of 2
Order: deeds Comment:
PDF created with pdfFactory trial version www.pdffactory.com

Exhibit H - 1

## APPOINTMENT OF SUCCESSOR TRUSTEE

KNOW ALL MEN BY THESE PRESENTS that Michael J. Hart and Mary A. Hart, husband and wife, as grantors, and Key Title Company, as the trustee, and Mortgage Electronic Registration Systems, Inc. solely as nominee for Mission Hills Mortgage Corporation, is the beneficiary under that certain trust deed dated 01/17/02, and recorded 01/25/02, as 02-1955 of the Mortgage Records of JOSEPHINE County, Oregon. The undersigned, who is the present beneficiary under said trust deed desires to appoint a new trustee in the place and stead of the original trustee named above;

NOW THEREFORE, in view of the premises, the undersigned hereby appoints Northwest Trustee Services, Inc., whose address is P.O. Box 997, Bellevue, WA 98009-0997 as successor trustee under said trust deed, to have all the powers of said original trustee, effective immediately.

In construing this instrument, and whenever the context so requires, the singular includes the plural.

IN WITNESS WHEREOF, the undersigned beneficiary has executed this document. If the undersigned is a corporation, it has caused its name to be signed and its seal affixed by an officer or other person duly authorized to do so by its board of directors.

BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME    LOANS SERVICING LP

By _Kimberly Sumrall_
Typed Name: _Kimberly J. Sumrall_
Title: _Assistant Vice President_

State of _Texas_    )
                    ) ss.
County of _Dallas_  )

This instrument was acknowledged before me on _November 25, 2011_ by _Kimberly J. Sumrall_ as _Assistant Vice President_ of BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME    LOANS SERVICING LP.

_James L Zurlis_
Notary signature **James L Zurlis**
My commission expires **01-28-2013**



JAMES L. ZURLIS
Notary Public
State of Texas
Comm. Exp. 01-28-2013

---

APPOINTMENT OF SUCCESSOR TRUSTEE
Re: Trust Deed from
HART, MICHAEL J. and MARY A.
            Grantor
        to
Northwest Trustee Services, Inc.
            Trustee        File No. 7021.10631

---

After recording return to:
Winston Khan
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2011.14789 Page: 2 of 2
Order: deeds Comment:
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit H - 2**

*12*





This space

JOSEPHINE COUNTY OFFICIAL RECORDS
ART HARVEY, COUNTY CLERK **2011-014790**
MTG-DES
Cnt=1 Pgs=3 Stn=3 TMORRIS  12/14/2011 02:48 PM
$15.00 $11.00 $15.00 $8.00 $5.00          Total:$54.00

0029179920110014790003032

I, Art Harvey, County Clerk, certify that the within document
was received and duly recorded in the official records of
Josephine County.



## Josephine County Clerk
## & Recorder's Office

*54—*

# CERTIFICATE
# PAGE

### This page must be included
### if document is re-recorded.

### <u>DO NOT</u> remove from original document.

*FA 1785306 FSg*

PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit I - 1**

## NOTICE OF DEFAULT AND ELECTION TO SELL

Reference is made to that certain trust deed made by Michael J Hart and Mary A Hart, husband and wife, as grantors, to Key Title Company, as trustee, in favor of Mortgage Electronic Registration Systems, Inc. solely as nominee for Mission Hills Mortgage Corporation, as beneficiary, dated 01/17/02, recorded 01/25/02, in the mortgage records of Josephine County, Oregon, as 02-1955, and subsequently assigned to Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing LP by Assignment, covering the following described real property situated in said county and state, to wit:

PARCEL 1: Beginning at the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon; thence South along the West line of said Section 1155 feet to the North line of the land described in Volume 172, Page 74, Josephine County Deed Records; thence East 751 feet to an iron pipe; thence South 165 feet to the South line of the North half of the Northwest Quarter of said Section 14; thence East 433.5 feet; thence North 46 degrees East 192 feet; thence North 36 degrees West 342 feet to the South bank of the Murphy Ditch; thence South 63 degrees 26' West 279.5 feet; thence North 1025 feet to the North line of said Section 14; thence West 874.5 feet to the point of beginning. LESS AND EXCEPTING: Commencing at the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon; thence running South along the Section line 1155 feet; thence East 751 feet; thence South 165 feet to the true point of beginning; thence North 115 feet; thence Southeasterly 44 feet to a point on the County Road which is 106 feet Northeasterly from the true point of beginning; thence Southwesterly 106 feet to the true point of beginning.

PARCEL 2: Commencing 1155 feet South and 751 feet East of the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon, which is the true point of beginning; thence South 50 feet; thence in a Northwesterly direction 158 feet to a point which is West 150 feet from said true point of beginning; thence East 150 feet to the true point of beginning.

PROPERTY ADDRESS:   990 Fish Hatchery Road
                    Grants Pass, OR 97527

There is a default by the grantor or other person owing an obligation or by their successor in interest, the performance of which is secured by said trust deed, or by their successor in interest, with respect to provisions therein which authorize sale in the event of default of such provision. The default for which foreclosure is made is grantors' failure to pay when due the following sums:  monthly payments of  $912.07 beginning 06/01/11; plus late charges of $42.48 each month beginning 06/16/11; plus prior accrued late charges of $0.00; plus advances of $0.00; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable.

By reason of said default, the beneficiary has declared all sums owing on the obligation secured by said trust deed immediately due and payable, said sums being the following, to wit:  $106,030.42 with interest thereon at the rate of 7.625 percent per annum beginning 05/01/11; plus late charges of $42.48 each month beginning 06/16/11 until paid; plus prior accrued late charges of $0.00; plus advances of $0.00; together with title expense, costs, trustee's fees and attorneys fees incurred herein by reason of said default;  any further sums advanced by the beneficiary for the protection of the above described property and its interest therein; and prepayment penalties/premiums, if applicable.

| | |
|---|---|
| **NOTICE OF DEFAULT AND ELECTION TO SELL**<br><br>RE: Trust Deed from<br>HART, MICHAEL J. and MARY A.<br>        Grantor<br>        to<br>Northwest Trustee Services, Inc.,<br>        Successor Trustee     File No. 7021.10631 | **For Additional Information:**<br>**After Recording return to:**<br>**Winston Khan**<br>**Northwest Trustee Services, Inc.**<br>**P.O. Box 997**<br>**Bellevue, WA 98009-0997**<br>**(425) 586-1900** |

Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2011.14790 Page: 2 of 3
Order: deeds Comment:
PDF created with pdfFactory trial version www.pdffactory.com

Exhibit I - 2

⑤

Notice is hereby given that the beneficiary and trustee, by reason of said default, have elected and do hereby elect to foreclose the trust deed by advertisement and sale pursuant to ORS 86.705 to 86.795, and to cause to be sold at public auction to the highest bidder for cash the interest in the described property which the grantor had, or had the power to convey, at the time grantor executed the trust deed, together with any interest the grantor or grantor's successors in interest acquired after the execution of the trust deed, to satisfy the obligations secured by the trust deed and the expenses of the sale, including the compensations of the trustee as provided by law, and reasonable fees of trustee's attorneys.

The sale will be held at the hour of 10:00 o'clock A.M., in accord with the standard of time established by ORS 187.110 on **April 24, 2012,** at the following place:  inside the main lobby of the Josephine County Courthouse, 500 NW 6th ( 6th and C), in the City of Grants Pass, County of Josephine, State of Oregon, which is the hour, date and place last set for the sale.

Notice is further given that reinstatement or payoff quotes requested pursuant to ORS 86.745 must be timely communicated in a written request that complies with that statute, addressed to the trustee's "Urgent Request Desk" either by personal delivery to the trustee's physical offices (call for address) or by first class, certified mail, return receipt requested, addressed to the trustee's post office box address set forth in this notice. Due to potential conflicts with federal law, persons having no record legal or equitable interest in the subject property will only receive information concerning the lender's estimated or actual bid.  Lender bid information is also available at the trustee's website, www.northwesttrustee.com.

Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing every other default complained of herein by tendering the performance required under the obligation or trust deed, in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and trust deed, together with trustee's and attorney's fees not exceeding the amounts provided by said ORS 86.753.  Requests from persons named in ORS 86.753 for reinstatement quotes received less than six days prior to the date set for the trustee's sale will be honored only at the discretion of the beneficiary or if required by the terms of the loan documents.

In construing this notice, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other person owing an obligation, the performance of which is secured by said trust deed, and the words "trustee" and "beneficiary" include their respective successors in interest, if any.

The trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference.  You may also access sale status at www.northwesttrustee.com.

_Winston K_

Northwest Trustee Services, Inc.-, Trustee
Northwest Trustee Services, Inc.

STATE OF WASHINGTON  )
                                          ) ss.
COUNTY OF KING            )

I certify that I know or have satisfactory evidence that  Winston Khan is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute the instrument and acknowledged it as an Assistant Vice President of Northwest Trustee Services, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated:  _12/13/2011_

```
LEAH M. OCONNOR
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
12-13-14
```

_Leah M O'Con_
NOTARY PUBLIC in and for the State of
Washington, residing at _Redmond WA_
My commission expires _12/13/2014_

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2011.14790 Page: 3 of 3
Order: deeds Comment:

Exhibit I - 3




(ta 1785306(Tog)

**RECORDING COVER SHEET**
**Pursuant to ORS 205.234**


JOSEPHINE COUNTY OFFICIAL RECORDS
ART HARVEY, COUNTY CLERK 2012-004368
MTG-AMN...(7)
Cnt=7 Pgs=20 Stn=2 RHENKELS 04/11/2012 10:28 AM
$100.00 $30.00 $11.00 $15.00 $8.00 $5.00  Total:$169.00

0028822420120004368020201

I, Art Harvey, County Clerk, certify that the within document
was received and duly recorded in the official records of
Josephine County.

After recording return to:

**Northwest Trustee Services, Inc.**
**As successor trustee**
**Attention: Winston Khan**
**P.O. Box 997**
**Bellevue, WA  98009-0997**

1. **AFFIDAVIT OF MAILING – NOTICE OF FORECLOSURE**      

2. **NOTICE OF FORECLOSURE**

3. **AFFIDAVIT OF NO TIMLEY RECEIPT OF REQUEST FOR LOAN**
   **MODIFICATION/MEETING UNDER ORS 86.737**

4. **AFFIDAVIT OF MAILING – TRUSTEE'S NOTICE OF SALE**

5. **TRUSTEE'S NOTICE OF SALE**

6. **PROOF OF SERVICE**

7. **AFFIDAVIT OF PUBLICATION**

**Original Grantor(s) on Trust Deed:  Michael J Hart and Mary A Hart, husband and wife**

**Beneficiary:  Mortgage Electronic Registration Systems, Inc. solely as nominee for Mission**
**Hills Mortgage Corporation**

**THIS COVER SHEET HAS BEEN PREPARED BY THE PERSON PRESENTING THE**
**ATTACHED INSTRUMENT FOR RECORDING.  ANY ERRORS CONTAINED IN**
**THIS COVER SHEET DO NOT AFFECT THE TRANSACTION(S) CONTAINED IN**
**THE INSTRUMENT ITSELF.**

*Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2012.4368 Page: 1 of 20*
*Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

Exhibit J - 1

2

## RECORDING  COVER SHEET
## FOR NOTICE OF SALE PROOF
## OF COMPLIANCE
PER ORS 205.234

THIS COVER SHEET HAS BEEN PREPARED BY THE PERSON
PRESENTING THE ATTACHED INSTRUMENT FOR
RECORDING.  ANY ERRORS IN THIS COVER SHEET
DO NOT AFFECT THE TRANSACTION(S) CONTAINED
IN THE INSTRUMENT ITSELF.

## AFER RECORDING RETURN TO:
Name and address of the person authorized to receive the
Instrument after recording, as required by ORS 205.180(4)
And ORS 205.238

**Northwest Trustee Services, Inc.**
**PO Box 997**
**Bellevue, WA 98009-0997**

**File Number:  7021.10631**

1.   MARK NAME(S) OF **ALL** THE TRANSACTION(S)  described in the attached instrument. Fill in the Original
Grantor on Trust Deed and the Beneficiary as indicated.  Each Affidavit of Mailing Notice of Sale or Affidavit of Publication
Notice of Sale or Proof of Service or Affidavit of Mailing Notice to Grantor ORS 86.737 or Affidavit of No Timely Receipt of
Request for Loan Modification/Meeting Under ORS 86.737 will be considered a transaction.

**Affidavit of Mailing, Notice of Foreclosure**
**Notice of Foreclosure**
**Affidavit of No Timely Receipt of Request for Loan Modification/Meeting**
**Affidavit of Mailing, Trustee's Notice of Sale**
**Trustee's Notice of Sale**
**Affidavits of Posting and Service**
**Affidavit of Publication**

2.   **Grantor**

Direct Party/Parties and Address(s):

| | |
|---|---|
| **Michael J. Hart** | **Mary A Hart** |
| **990 Fish Hatchery Road** | **990 Fish Hatchery Road** |
| **Grants Pass, OR  97527** | **Grants Pass, OR  97527** |

3.   **Grantee**

Direct Party/Parties and Address(s):

**Bank of America, NA**
**400 National Way**
**Simi Valley, CA  93065**

Indirect Party/Parties and Address(s):

| | |
|---|---|
| **Northwest Trustee Services, Inc** | **FEI, LLC** |
| **PO Box 997** | **3535 Factoria Blvd SE** |
| **Bellevue, WA  98006** | **Bellevue, WA  98006** |

*Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2012.4368 Page: 2 of 20*
*Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit J - 2**

4.  Newspaper(s)

**Grants Pass Daily Courier**
**PO Box 1468**
**Grants Pass, OR  97528**

Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2012.4368 Page: 3 of 20
Order: deeds Comment:
PDF created with pdfFactory trial version www.pdffactory.com

Exhibit J - 3

IX

## AFFIDAVIT OF MAILING NOTICE OF FORECLOSURE

STATE OF WASHINGTON, County of KING) ss:

I, the undersigned, being first duly sworn, depose and say and certify that:

At all times hereinafter mentioned, I was and now am a resident of the State of Washington, a competent person over the age of eighteen years and not the beneficiary or beneficiary's successor in interest named in the attached original Notice of Foreclosure given under the terms of that certain deed described in said notice.

I gave notice of the sale of the real property described in the attached Notice of Foreclosure as required by Section 20 of Chapter 19, Oregon Laws 2008 ("Bill") by mailing a copy thereof by both first class and certified mail with return receipt requested to each of the following named persons (or their legal representatives, where so indicated) at their respective last known address, to-wit:

See Attached Exhibit A

Said persons include (a) the grantor in the trust deed, (b) any successor in interest to the grantor whose interest appears of record or of whose interest the trustee or the beneficiary has actual notice and to the occupant residing in the Property.

Each of the notices so mailed was certified to be a true copy of the original Notice of Foreclosure, each such copy was contained in a sealed envelope, with postage thereon fully prepaid, and was deposited by me in the United States post office at Bellevue, Washington, on 12-15-11 . With respect to each person listed above, one such notice was mailed with postage thereon sufficient for first class delivery to the address indicated, and another such notice was mailed with a proper form to request and obtain a return receipt and postage thereon in the amount sufficient to accomplish the same. Each of said notices was mailed after the notice of default and election to sell was recorded. The form of the notice complies with Sections 20 and 21 of the Bill and a copy is enclosed with this affidavit.

As used herein, the singular includes the plural, trustee includes successor trustee, and person includes corporation and any other legal or commercial entity.

STATE OF WASHINGTON )
                     ) ss.
COUNTY OF KING       )

I certify that I know or have satisfactory evidence that Nic Harmston is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument and acknowledged it to be (his/her) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: 12-15-11

NOTARY PUBLIC in and for the State of Washington, residing at King Co.
My commission expires 3-9-15

---

AFFIDAVIT OF MAILING NOTICE OF
FORECLOSURE
RE: Trust Deed from
HART, MICHAEL J. and MARY A.
Grantor
to
Northwest Trustee Services, Inc.,
Trustee
File No. 7021.10631

After recording return to:
Northwest Trustee Services, Inc.
Attn: Winston Khan
P.O. Box 997
Bellevue, WA 98009-0997

---

MYRTLE LOUISE WALVATNE
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
03-09-15

---

Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2012.4368 Page: 4 of 20
Order: deeds Comment:
PDF created with pdfFactory trial version www.pdffactory.com

Exhibit J - 4

**EXHIBIT A**

Occupant(s)
990 Fish Hatchery Road
Grants Pass, OR 97527

Mary A Hart
c/o Richard K. Lane, Attorney
219 Northwest E Street
Grants Pass, OR 97526

Michael J Hart
c/o Claudia E. Browne, Attorney
236 Northwest E Street
Grants Pass, OR 97526

Mary A Hart
555 Northeast F Street #B
Grants Pass, OR 97526

Michael J Hart
555 Northeast F Street #B
Grants Pass, OR 97526

Mary A Hart
234 Mint Lane
Grants Pass, OR 97527

Michael J Hart
234 Mint Lane
Grants Pass, OR 97527

Mary A Hart
990 Fish Hatchery Road
Grants Pass, OR 97527

Michael J Hart
990 Fish Hatchery Road
Grants Pass, OR 97527

7021.10631
Winston Khan

*Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2012.4368 Page: 5 of 20*
*Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit J - 5**

## NOTICE:
## YOU ARE IN DANGER OF LOSING YOUR PROPERTY
## IF YOU DO NOT TAKE ACTION IMMEDIATELY

**This notice is about your mortgage loan on your property at:**
990 Fish Hatchery Road
Grants Pass, OR 97527

Your lender has decided to sell this property because the money due on your mortgage loan has not been paid on time or because you have failed to fulfill some other obligation to your lender. This is sometimes called "foreclosure."

The amount you would have had to pay as of 12/14/2011 (date) to bring your mortgage loan current was $7948.37. The amount you must now pay to bring your loan current may have increased since that date.

By law, your lender has to provide you with details about the amount you owe, if you ask. You may call (866) 254-5790 to find out the exact amount you must pay bring your to mortgage loan current and to get other details about the amount you owe.

You may also get these details by sending a request by certified mail to:
Northwest Trustee Services, Inc.
PO Box 997
Bellevue, WA 98009-0997

## THIS IS WHEN AND WHERE YOUR PROPERTY WILL BE SOLD IF YOU
## DO NOT TAKE ACTION:
Date and time: 04/24/2012 at 10:00 AM
Place: inside the main lobby of the Josephine County Courthouse, 500 NW 6th ( 6th and C), Grants Pass OR

| THIS IS WHAT YOU CAN DO TO STOP THE SALE: |
|---|
| 1. You can pay the amount past due or correct any other default, up to five days before the sale. |
| 2. You can refinance or otherwise pay off the loan in full anytime before the sale. |
| 3. You can request that your lender give you more time or change the terms of your loan. |
| 4. You can sell your home, provided the sale price is enough to pay what you owe. |

There are government agencies and nonprofit organizations that can give you information about foreclosure and help you decide what to do. For the name and phone number of an organization near you, please call the statewide phone contact number at **800-SAFENET (800-723-3638)**.

PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit J - 6**

You may also wish to talk to a lawyer. If you need help finding a lawyer, you may call the Oregon State Bar's Lawyer Referral Service at **503-684-3763** or toll-free in Oregon at **800-452-7636** or you may visit its Web site at: **www.osbar.org**. Legal assistance may be available if you have a low income and meet federal poverty guidelines. For more information and a directory of legal aid programs, go to **http://www.oregonlawhelp.org**.

Your lender may be willing to modify your loan to reduce the interest rate, reduce the monthly payments or both. You can get information about possible loan modification programs by contacting your lender at 800-669-6607. If you can't reach your lender, you may contact the trustee at the telephone number at the bottom of this notice. If you have already entered into a loan modification with your lender, it is possible that you will not be able to modify your loan again unless your circumstances have changed. Your lender is not obligated to modify your loan.

You may request to meet with your lender to discuss options for modifying your loan. During discussions with your lender, you may have the assistance of a lawyer, a housing counselor or another person of your choosing. To receive a referral to a housing counselor or other assistance available in your community, call this toll-free consumer mortgage foreclosure information number: **800-SAFENET (800-723-3638)**. Many lenders participate in new federal loan modification programs. You can obtain more information about these programs at: **http://www.makinghomeaffordable.gov/**.

IF YOU WANT TO APPLY TO MODIFY YOUR LOAN, YOU MUST FILL OUT AND MAIL BACK THE ENCLOSED "MODIFICATION REQUEST FORM." THE FORM ATTACHED MUST BE RETURNED AS DIRECTED BY 01/13/2012, WHICH IS 30 DAYS AFTER THE DATE SHOWN BELOW.

WARNING: You may get offers from people who tell you they can help you keep your property. You should be careful about those offers. Make sure you understand any papers you are asked to sign. If you have questions, talk to a lawyer or one of the organizations mentioned above before signing.

DATED: 12/14/2011
Trustee contact name: Winston Khan
Trustee telephone number: 425-586-1900
7021.10631/HART, MICHAEL J. and MARY A.

PDF created with pdfFactory trial version www.pdffactory.com

Exhibit J - 7

# LOAN MODIFICATION/MEETING REQUEST FORM

**Your home is at risk of foreclosure.** There may be options available to help you keep your home. If you want to request a loan modification, you must return this form to the address below by 01/13/2012, which is 30 days from the date the Trustee signed the accompanying Notice:

**Northwest Trustee Services, Inc.**
**PO Box 997**
**Bellevue, WA 98009-0997**

There may be options available to you, including:

1) Modifying your loan terms
2) Temporarily lowering payments
3) Scheduling payments to cure the arrears
4) Temporary suspension of payments
5) Other options based on your lender and the type of loan.

In order to discuss your loan options, you should gather and provide the following documents:

1) Last year's tax returns
2) Pay stubs for the last 2 months
3) Bank statements for the last 3 months
4) Other documents showing your financial hardship status
5) Your lender may request that you complete additional forms or provide additional information

**RETURNING THIS REQUEST DOES NOT MODIFY YOUR LOAN.   Your lender is required to contact you within 45 days after you return this form to discuss a possible loan modification. The foreclosure sale will not occur until your lender has contacted you about your request.  YOUR LENDER IS NOT REQUIRED TO MODIFY YOUR LOAN.  The foreclosure sale may proceed if your loan is not modified.**

☐ **CHECK THIS BOX TO REQUEST A MEETING.** Before the lender responds to your request for a loan modification, you may request IN WRITING a meeting with the lender by sending your written request for a meeting to:

**Northwest Trustee Services, Inc.**
**PO Box 997**
**Bellevue, WA 98009-0997**

Upon receipt of your written request for a meeting, the lender will attempt to contact you by mail, telephone or e-mail to schedule a meeting in person or by telephone at the lender's option. NOTE: It is important that you respond immediately to any contact from your lender to schedule a meeting that you have requested. If you do not respond within 7 days from the date your lender attempts to contact you to schedule a meeting, your lender may refuse to meet, deny your request for consideration of a loan modification and resume foreclosure activities.

File No.:            7021.10631
Loan No.:         3237406
Borrower Name:   HART, MICHAEL J. and MARY A.
Property Address:  990 Fish Hatchery Road, Grants Pass, OR 97527

Please indicate where your lender may contact you:

Mailing Address: _____

Home Telephone Number: _____ Work Telephone Number: _____

Email: _____ (providing your e-mail address authorizes the lender or its agent to communicate with you by e-mail concerning your request for loan modification consideration and for the purpose of scheduling and confirming a meeting.

Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2012.4368 Page: 8 of 20
Order: deeds Comment:
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit J - 8**

Affidavit of No Timely Receipt of Request for Loan
Modification or Meeting ORS 86.737
Re: Trust Deed from
**Michael J Hart and Mary A Hart, husband and**
**wife**
      Grantor
        to
**Northwest Trustee Services, Inc.**
      Trustee      File No. **7021.10631**

## Affidavit of No Timely Receipt of Request for Loan Modification/Meeting Under ORS 86.737

**Original Loan Amount:** $120,000.00
**Borrower name(s):** HART, MICHAEL J. and MARY A.
**Property Address:** 990 Fish Hatchery Road, Grants Pass, OR 97527

The undersigned is an employee of the trustee under the trust deed securing the above-referenced loan and is executing this affidavit on behalf of the trustee. The undersigned is at least 18 years of age and competent to testify in a court of law and, having personal knowledge of the matters set forth below, represents and avers, under the penalty of perjury, that the following is true and correct:

**No Request for Meeting or Loan Modification Received.** The trustee duly mailed to the borrower(s) identified above the notice required by ORS 86.737 ("Notice"). With the Notice, the trustee also included the form contemplated by ORS 86.737 on which the borrower(s) could elect to ask the beneficiary to consider granting a loan modification ("Form"). The Notice also invited the borrower(s) to request a meeting. The Notice and/or Form instructed the borrower(s) to submit the request for modification and/or meeting to the trustee at the address provided in the Notice and/or Form. The Notice also provided a deadline date by which the trustee would need to receive from the borrower(s) a request for loan modification or request for a meeting. The trustee did not receive a request for loan modification form or request for meeting from the borrower(s) before the deadline set forth in the Notice.

**Limited Agency.** In executing this affidavit, the trustee is acting as the beneficiary's agent for the sole and limited purpose of executing this affidavit.

**Disclaimer.** The trustee is executing and recording this affidavit only because title insurers have compelled it to do so as a title insurance underwriting requirement. The trustee does not believe that an affidavit is legally required by ORS 86.737 in circumstances where the borrower has not timely submitted a request for a loan modification or a meeting under the ORS 86.737.

**No Statement Concerning Borrower's Other Contacts with the Beneficiary.** Nothing in this affidavit may be construed as an averment that the borrower has not contacted the beneficiary to arrange a meeting or discuss a loan modification or other arrangement outside the procedural framework of ORS 86.737.

DATED: April 6, 2012

Northwest Trustee Services, Inc.

By: _____

Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2012.4368 Page: 9 of 20
Order: deeds Comment:

PDF created with pdfFactory trial version www.pdffactory.com

Exhibit J - 9

\O

STATE OF WASHINGTON          )
                            ) ss.
COUNTY OF KING               )

   I certify that I know or have satisfactory evidence that Winston Khan is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute the instrument and acknowledged it to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: April 6, 2012

NOTARY PUBLIC in and for the State of Washington, residing at _Redmond_
My commission expires ___12/13/2014___

LEAH M. OCONNOR
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
12-13-14

PDF created with pdfFactory trial version www.pdffactory.com

Exhibit J - 10

**AFFIDAVIT OF MAILING TRUSTEE'S NOTICE OF SALE**

STATE OF WASHINGTON, County of KING) ss:

I, the undersigned, being first duly sworn, depose and say and certify that:

At all times hereinafter mentioned, I was and now am a resident of the State of Washington, a competent person over the age of eighteen years and not the beneficiary or beneficiary's successor in interest named in the attached original notice of sale given under the terms of that certain deed described in said notice.

I gave notice of the sale of the real property described in the attached notice of sale by mailing a copy thereof by both first class and certified mail with return receipt requested to each of the following named persons (or their legal representatives, where so indicated) at their respective last known address, to-wit:

See Attached Exhibit A

Said persons include (a) the grantor in the trust deed, (b) any successor in interest to the grantor whose interest appears of record or of whose interest the trustee or the beneficiary has actual notice, (c) any person, including the Department of Revenue or any other state agency, having a lien or interest subsequent to the trust deed if the lien or interest appears of record or the beneficiary has actual notice of the lien or interest, and (d) any person requesting notice, as required by ORS 86.785.

Each of the notices so mailed was certified to be a true copy of the original notice of sale, each such copy was contained in a sealed envelope, with postage thereon fully prepaid, and was deposited by me in the United States post office at Bellevue, Washington, on 12-15-11 . With respect to each person listed above, one such notice was mailed with postage thereon sufficient for first class delivery to the address indicated, and another such notice was mailed with a proper form to request and obtain a return receipt and postage thereon in the amount sufficient to accomplish the same. Each of said notices was mailed after the notice of default and election to sell described in said notice of sale was recorded.

As used herein, the singular includes the plural, trustee includes successor trustee, and person includes corporation and any other legal or commercial entity.

STATE OF WASHINGTON    )
                                              ) ss.
COUNTY OF KING           )

I certify that I know or have satisfactory evidence that Nic Harmston is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument and acknowledged it to be (his/her) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: 12-15-11

Myrtle Louise Walvatne
NOTARY PUBLIC in and for the State of Washington, residing at King Co..
My commission expires 3-09-15

---

**AFFIDAVIT OF MAILING TRUSTEE'S NOTICE OF SALE**
RE: Trust Deed from
HART, MICHAEL J. and MARY A.
                Grantor
        to
Northwest Trustee Services, Inc.,
                Trustee          File No. 7021.10631

After recording return to:
Northwest Trustee Services, Inc.
Successor by merger to Northwest Trustee Services, PLLC
(formerly known as Northwest Trustee Services, LLC)
Attn: Winston Khan
P.O. Box 997
Bellevue, WA 98009-0997

MYRTLE LOUISE WALVATNE
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
03-09-15

PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit J - 11**



**EXHIBIT A**

Diana Franklin
251 Hill Top Drive
Grants Pass, OR 97527

Internal Revenue Service
915 2nd Avenue M/S W245, Lien Desk
Seattle, WA 98174

Mary A Hart
555 Northeast F Street #B
Grants Pass, OR 97526

Mary A Hart
c/o Richard K. Lane, Attorney
219 Northwest E Street
Grants Pass, OR 97526

Michael J Hart
555 Northeast F Street #B
Grants Pass, OR 97526

Michael J Hart
c/o Claudia E. Browne, Attorney
236 Northwest E Street
Grants Pass, OR 97526

Murphy Ditch Association
PO Box 112
Murphy, OR 97533

Diana Franklin
c/o Robert A. Graham Jr, Attorney
236 Northwest East Street
Grants Pass, OR 97526

Mary A Hart
234 Mint Lane
Grants Pass, OR 97527

Mary A Hart
990 Fish Hatchery Road
Grants Pass, OR 97527

Michael J Hart
234 Mint Lane
Grants Pass, OR 97527

Michael J Hart
990 Fish Hatchery Road
Grants Pass, OR 97527

Murphy Ditch Association
c/o Terri L Collins-Bain, Reg Agent
5990 New Hope Road
Grants Pass, OR 97527

Occupant(s)
990 Fish Hatchery Road
Grants Pass, OR 97527

7021.10631
Winston Khan

PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit J - 12**



# December 12, 2011

## Notice

**Pursuant to the Federal Fair Debt Collection Practices Act: If you are the consumer who originally contracted the debt or if you assumed the debt, then you are notified that:**

1.  As of the date of this notice, you owe $112,917.74. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check. For further information write or call:

    **Northwest Trustee Services, Inc.**
    **P.O. Box 997**
    **Bellevue, WA 98009-0997**
    **(425) 586-1900**

2.  The creditor to whom the debt is owed is Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing LP/Bank of America, N.A..

3.  Unless within 30 days after receipt of this notice you dispute the debt or any portion of it, we will assume the debt to be valid.

4.  If you notify us within 30 days after receipt of this notice that you dispute the debt or any part of it, we shall obtain verification of the debt and mail it to you.

5.  If you request within 30 days after receipt of this notice, we will provide you with the name and address of the original creditor, if different from the current creditor.

HART, MICHAEL J. and MARY A./7021.10631

*Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2012.4368 Page: 13 of 20*
*Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit J - 13**

### TRUSTEE'S NOTICE OF SALE

**File No. 7021.10631**

Reference is made to that certain trust deed made by Michael J Hart and Mary A Hart, husband and wife, as grantor, to Key Title Company, as trustee, in favor of Mortgage Electronic Registration Systems, Inc. solely as nominee for Mission Hills Mortgage Corporation, as beneficiary, dated 01/17/02, recorded 01/25/02, in the mortgage records of Josephine County, Oregon, as 02-1955 and subsequently assigned to Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing LP by Assignment, covering the following described real property situated in said county and state, to wit:

PARCEL 1: Beginning at the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon; thence South along the West line of said Section 1155 feet to the North line of the land described in Volume 172, Page 74, Josephine County Deed Records; thence East 751 feet to an iron pipe; thence South 165 feet to the South line of the North half of the Northwest Quarter of said Section 14; thence East 433.5 feet; thence North 46 degrees East 192 feet; thence North 36 degrees West 342 feet to the South bank of the Murphy Ditch; thence South 63 degrees 26' West 279.5 feet; thence North 1025 feet to the North line of said Section 14; thence West 874.5 feet to the point of beginning. LESS AND EXCEPTING: Commencing at the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon; thence running South along the Section line 1155 feet; thence East 751 feet; thence South 165 feet to the true point of beginning; thence North 115 feet; thence Southeasterly 44 feet to a point on the County Road which is 106 feet Northeasterly from the true point of beginning; thence Southwesterly 106 feet to the true point of beginning.

PARCEL 2: Commencing 1155 feet South and 751 feet East of the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon, which is the true point of beginning; thence South 50 feet; thence in a Northwesterly direction 158 feet to a point which is West 150 feet from said true point of beginning; thence East 150 feet to the true point of beginning.

PROPERTY ADDRESS:   990 Fish Hatchery Road
                    Grants Pass, OR 97527

Both the beneficiary and the trustee have elected to sell the real property to satisfy the obligations secured by the trust deed and a notice of default has been recorded pursuant to Oregon Revised Statutes 86.735(3); the default for which the foreclosure is made is grantor's failure to pay when due the following sums: monthly payments of $912.07 beginning 06/01/11; plus late charges of $42.48 each month beginning 06/16/11; plus prior accrued late charges of $0.00; plus advances of $0.00; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable.

By reason of said default the beneficiary has declared all sums owing on the obligation secured by the trust deed immediately due and payable, said sums being the following, to wit: $106,030.42 with interest thereon at the rate of 7.625 percent per annum beginning 05/01/11; plus late charges of $42.48 each month beginning 06/16/11 until paid; plus prior accrued late charges of $0.00; plus advances of $0.00; together with title expense, costs, trustee's fees and attorneys fees incurred herein by reason of said default; any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable.

WHEREFORE, notice hereby is given that the undersigned trustee will on **April 24, 2012** at the hour of 10:00 o'clock, A.M. in accord with the standard of time established by ORS 187.110, at the following place: inside the main lobby of the Josephine County Courthouse, 500 NW 6th ( 6th and C), in the City of Grants Pass, County of Josephine, State of Oregon, sell at public auction to the highest bidder for cash the interest in the described real

PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit J - 14**



property which the grantor had or had power to convey at the time of the execution by grantor of the trust deed, together with any interest which the grantor or grantor's successors in interest acquired after the execution of the trust deed, to satisfy the foregoing obligations thereby secured and the costs and expenses of sale, including a reasonable charge by the trustee. Notice is further given that for reinstatement or payoff quotes requested pursuant to ORS 86.757 and 86.759 must be timely communicated in a written request that complies with that statute addressed to the trustee's "Urgent Request Desk" either by personal delivery to the trustee's physical offices (call for address) or by first class, certified mail, return receipt requested, addressed to the trustee's post office box address set forth in this notice. Due to potential conflicts with federal law, persons having no record legal or equitable interest in the subject property will only receive information concerning the lender's estimated or actual bid. Lender bid information is also available at the trustee's website, www.northwesttrustee.com. Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing any other default complained of herein that is capable of being cured by tendering the performance required under the obligation or trust deed, and in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and trust deed, together with trustee's and attorney's fees not exceeding the amounts provided by said ORS 86.753. Requests from persons named in ORS 86.753 for reinstatement quotes received less than six days prior to the date set for the trustee's sale will be honored only at the discretion of the beneficiary or if required by the terms of the loan documents.

In construing this notice, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other person owing an obligation, the performance of which is secured by said trust deed, and the words "trustee" and "beneficiary" include their respective successors in interest, if any.

## NOTICE TO RESIDENTIAL TENANTS

The property in which you are living is in foreclosure. A foreclosure sale is scheduled for April 24, 2012. The date of this sale may be postponed. Unless the lender that is foreclosing on this property is paid before the sale date, the foreclosure will go through and someone new will own this property. After the sale, the new owner is required to provide you with contact information and notice that the sale took place.

The following information applies to you only if you are a bona fide tenant occupying and renting this property as a residential dwelling under a legitimate rental agreement. The information does not apply to you if you own this property or if you are not a bona fide residential tenant.

If the foreclosure sale goes through, the new owner will have the right to require you to move out. Before the new owner can require you to move, the new owner must provide you with written notice that specifies the date by which you must move out. If you do not leave before the move-out date, the new owner can have the sheriff remove you from the property after a court hearing. You will receive notice of the court hearing.

### PROTECTION FROM EVICTION

IF YOU ARE A BONA FIDE TENANT OCCUPYING AND RENTING THIS PROPERTY AS A RESIDENTIAL DWELLING, YOU HAVE THE RIGHT TO CONTINUE LIVING IN THIS PROPERTY AFTER THE FORECLOSURE SALE FOR:

☐ THE REMAINDER OF YOUR FIXED TERM LEASE, IF YOU HAVE A FIXED TERM LEASE; OR

☐ AT LEAST 90 DAYS FROM THE DATE YOU ARE GIVEN A WRITTEN TERMINATION NOTICE.

If the new owner wants to move in and use this property as a primary residence, the new owner can give you written notice and require you to move out after 90 days, even though you have a fixed term lease with more than 90 days left.

*Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2012.4368 Page: 15 of 20 Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit J - 15**

You must be provided with at least 90 days' written notice after the foreclosure sale before you can be required to move.

A bona fide tenant is a residential tenant who is not the borrower (property owner) or a child, spouse or parent of the borrower, and whose rental agreement:

☐ Is the result of an arm's-length transaction;

☐ Requires the payment of rent that is not substantially less than fair market rent for the property, unless the rent is reduced or subsidized due to a federal, state or local subsidy; and

☐ Was entered into prior to the date of the foreclosure sale.

### ABOUT YOUR TENANCY

### BETWEEN NOW AND THE FORECLOSURE SALE:

### RENT

YOU SHOULD CONTINUE TO PAY RENT TO YOUR LANDLORD UNTIL THE PROPERTY IS SOLD OR UNTIL A COURT TELLS YOU OTHERWISE. IF YOU DO NOT PAY RENT, YOU CAN BE EVICTED. BE SURE TO KEEP PROOF OF ANY PAYMENTS YOU MAKE.

### SECURITY DEPOSIT

You may apply your security deposit and any rent you paid in advance against the current rent you owe your landlord as provided in ORS 90.367. To do this, you must notify your landlord in writing that you want to subtract the amount of your security deposit or prepaid rent from your rent payment. You may do this only for the rent you owe your current landlord. If you do this, you must do so before the foreclosure sale. The business or individual who buys this property at the foreclosure sale is not responsible to you for any deposit or prepaid rent you paid to your landlord.

### ABOUT YOUR TENANCY

### AFTER THE FORECLOSURE SALE

The new owner that buys this property at the foreclosure sale may be willing to allow you to stay as a tenant instead of requiring you to move out after 90 days or at the end of your fixed term lease. After the sale, you should receive a written notice informing you that the sale took place and giving you the new owner's name and contact information. You should contact the new owner if you would like to stay. If the new owner accepts rent from you, signs a new residential rental agreement with you or does not notify you in writing within 30 days after the date of the foreclosure sale that you must move out, the new owner becomes your new landlord and must maintain the property. Otherwise:

☐ You do not owe rent;

☐ The new owner is not your landlord and is not responsible for maintaining the property on your behalf; and

☐ You must move out by the date the new owner specifies in a notice to you.

The new owner may offer to pay your moving expenses and any other costs or amounts you and the new owner agree on in exchange for your agreement to leave the premises in less than 90 days or before your fixed term lease expires. You should speak with a lawyer to fully understand your rights before making any decisions regarding your tenancy.

IT IS UNLAWFUL FOR ANY PERSON TO TRY TO FORCE YOU TO LEAVE YOUR DWELLING UNIT WITHOUT FIRST GIVING YOU WRITTEN NOTICE AND GOING TO COURT TO EVICT YOU. FOR

*Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2012.4368 Page: 16 of 20*
*Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit J - 16**



MORE INFORMATION ABOUT YOUR RIGHTS, YOU SHOULD CONSULT A LAWYER. If you believe you need legal assistance, contact the Oregon State Bar Association (16037 Upper Boones Ferry Road, Tigard, Oregon 97224, (503)620-0222, toll-free in Oregon (800)452-8260) and ask for the lawyer referral service. If you do not have enough money to pay a lawyer and are otherwise eligible, you may be able to receive legal assistance for free. Information about whom to contact for free legal assistance; a county-by-county listing of legal aid resources may be found on the Internet at http://www.osbar.org/public/ris/lowcostlegalhelp/legalaid.html.

The trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference.  You may also access sale status at www.northwesttrustee.com and www.USA-Foreclosure.com.

Dated: **December 15**, 20 **11**

Northwest Trustee Services, Inc.

By _____

Assistant Vice President,
Northwest Trustee Services, Inc.

For further information, please contact:

Winston Khan
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997
**(425)** 586-1900
File No.7021.10631/HART, MICHAEL J. and MARY A.

State of Washington, County of King) ss:

     I, the undersigned, certify that the foregoing is a complete and accurate copy of the original trustee's notice of sale.

                                                By Authorized Signer

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

*Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2012.4368 Page: 17 of 20*
*Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit J - 17**



## FEI, LLC
### Affidavit of Posting and Service

State of Oregon
County of Josephine

Samantha Blankenship, being sworn, says:

- That I am over 18 years of age, a resident of Oregon, and not a party to the proceeding referred to in the attached Notice of Trustee's Sale:

- That my business address is. 40 N. Front Street, Central Point, OR.

- That I personally served a copy of the Notice of Trustee's Sale upon an adult occupant of the real property, commonly referred to as 990 Fish Hatchery Road, Grants Pass, OR 97527 in the manner in which a summons is served by delivering to or leaving with [Person refused to give Name], a person over the age of eighteen (18) years, then residing therein on Friday, December 16, 2011, at 01:13 pm.

Signed in Jackson County, Oregon by:

Signature _____

Date ___12/28/11___

State of Oregon
County of ___Jackson___

On this ___28___ day of ___December___ in the year of ___2011___, before me a Notary Public, Personally appeared ___Samantha Blankenship___ known or identified to me to be the person whose name is subscribed to the within instrument, and being by me first duly sworn, declared that the statements therein are true, and acknowledged to me that he/she executed the same.

Notary Public for Oregon: ___Kristeen L. Martin___

Residing at: ___Central Point, OR___

Commission expires: ___7/23/14___




OFFICIAL SEAL
KRISTEEN L MARTIN
NOTARY PUBLIC - OREGON
COMMISSION NO. 449767
MY COMMISSION EXPIRES JULY 23, 2014

1002.200009
7021.10631

Northwest Trustee Services, Inc.

*Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2012.4368 Page: 18 of 20*
*Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit J - 18**



### Grants Pass
# Daily Courier

**P.O. Box 1468, 409 S.E. 7th Street • Grants Pass, Oregon  97528**

## AFFIDAVIT OF PUBLICATION

State of Oregon  )
County of Josephine  )  ss.

I, Tamara Stuebing, being first duly sworn, depose and say that I am the manager of Courier Publishing Co., printer of the Grants Pass Daily Courier, a newspaper of general circulation, as defined by ORS 193.010 and 193.020; printed and published at Grants Pass, in the aforesaid county and state; that the LEGAL NOTICE, a printed copy of which is herein enclosed, was published in the entire issue of said paper, for four insertions, on the following dates:

January 23, 2012; January 30, 2012; February 6, 2012; February 13, 2012.



Subscribed and sworn to before me this thirteenth day of February, 2012.

Notary Public of Oregon

My commission expires the thirteenth day of April, 2015.

259118

OFFICIAL SEAL
CHRISTINE HOLLY CRAINE
NOTARY PUBLIC - OREGON
COMMISSION NO. A456784
MY COMMISSION EXPIRES APRIL 13, 2015

Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2012.4368 Page: 19 of 20
Order: deeds Comment:
PDF created with pdfFactory trial version www.pdffactory.com

Exhibit J - 19



Notice is further given that for reinstatement or payoff quotes requested pursuant to ORS 86.757 and 86.759 must be timely communicated in a written request that complies with that statute addressed to the Trustee's "Urgent Request Desk" either by personal delivery to the Trustee's physical offices (call for address) or by first class, certified mail, return receipt requested, addressed to the Trustee's post office box address set forth in this notice. Due to subject property will only receive information concerning the lender's estimate or actual bid. Lender bid information is also available at the Trustee's website, www.northwesttrustee.com.

Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the Trust Deed reinstated by payment to the Beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing any other default complained of herein that is capable of being cured by tendering the performance required under the obligation or Trust Deed, and in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and Trust Deed, together with Trustee's and attorney's fees not exceeding the amounts provided by said ORS 86.753.

Requests from persons named in ORS 86.753 for reinstatement quotes received less than six days prior to the date set for the Trustee's sale will be honored only at the discretion of the Beneficiary or if required by the terms of the loan documents.

In construing this notice, the singular includes the plural, the word "Grantor" includes any successor in interest to the Grantor as well as any other person owing an obligation, the performance of which is secured by said Trust Deed, and the words "Trustee" and "Beneficiary" include their respective successors in interest, if any. The Trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference. You may also access sale status at www.northwesttrustee.com and www.USA-Foreclosure.com.

For further information, please contact:

Weston Khan Northwest Trustee Services, Inc.
P.O. Box 997 Bellevue, WA 98009 (425)586-1900
HART, MICHAEL J. and MARY A. (TS# 7021:10631) 1002.206089-FEI
No. 00259110 – January 23, 30, February 6 and 13, 2012

---

## LEGAL NOTICE

### TRUSTEE'S NOTICE OF SALE
File No. 7021.10631

Reference is made to that certain Trust Deed made by Michael J Hart and Mary A Hart, husband and wife, as Grantor, to Key Title Company, as Trustee, in favor of Mortgage Electronic Registration Systems, Inc. solely as nominee for Mission Hills Mortgage Corporation, as Beneficiary, dated 01/17/02, recorded 01/25/02, in the mortgage records of Josephine County, Oregon, as 02-01955 and subsequently assigned to Bank of America, N.A., as successor by merger to BAC Home Loans Servicing LP fka Countrywide Home Loans Servicing LP by Assignment, covering the following described real property situated in said county and state, to wit:

PARCEL 1: Beginning at the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon; thence South along the West line of said Section 1155 feet to the North line of the land described in Volume 172, Page 74, Josephine County Deed Records; thence East 751 feet in an iron pipe; thence South 24 feet to the South line of the North half of the Northwest Quarter of said Section 14; thence East 433.5 feet; thence North 46 degrees East 192 feet; thence North 36 degrees West 342 feet to the South bank of the Murphy Ditch; thence South 63 degrees 26' West 279.5 feet; thence North 1025 feet to the North line of said Section 14; thence West 874.5 feet to the point of beginning. LESS AND EXCEPTING: Commencing at the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon; thence running South along the Section line 1155 feet; thence East 751 feet; thence South 1165 feet to the true point of beginning; thence North 115 feet; thence Southeasterly 44 feet to a point on the County Road which is 106 feet Northeasterly from the true point of beginning; thence Southwesterly 106 feet to the true point of beginning. PARCEL 2: Commencing 1155 feet South and 751 feet East of the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon, which is the true point of beginning; thence South 50 feet; thence in a Northwesterly direction 150 feet to a point which is West 150 feet from said true point of beginning; thence East 150 feet to the true point of beginning. PROPERTY ADDRESS: 990 Fish Hatchery Road, Grants Pass OR 97527.

Both the Beneficiary and the Trustee have elected to sell the said real property to satisfy the obligations secured by the Trust Deed and a notice of default has been recorded pursuant to Oregon Revised Statutes 86.735(3); the default for which the foreclosure is made is Grantor's failure to pay when due the following sums: Monthly payments of $912.07 beginning 06/01/11; plus late charges of $42.48 each month beginning 06/16/11; plus prior accrued late charges of $0.00; plus advances of $0.00; together with title expense, costs, Trustee's fees and attorney's fees incurred herein by reason of said default; any further sums advanced by the Beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable.

By reason of said default the Beneficiary has declared all sums owing on the obligation secured by the Trust Deed immediately due and payable, said sums being the following, to wit: $106,000.42 with interest thereon at the rate of 7.625 percent per annum beginning 05/01/11; plus late charges of $42.48 each month beginning 06/16/11 until paid, plus prior accrued late charges of $0.00; plus advances of $0.00; together with title expense, costs, Trustee's fees and attorney's fees incurred herein by reason of said default; any further sums advanced by the Beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable.

WHEREFORE, notice hereby is given that the undersigned Trustee will on April 24, 2012 at the hour of 10:00 o'clock, A.M. in accord with the standard of time established by ORS 187.110, at the following place: inside the main lobby of the Josephine County Courthouse, 500 NW 6th (6th and C), in the City of Grants Pass, County of Josephine, State of Oregon, sell at public auction to the highest bidder for cash the interest in the described real property which the Grantor had or had power to convey at the time of the execution by Grantor of the Trust Deed, together with any interest which the Grantor or Grantor's successors in interest acquired after the execution of the Trust Deed, to satisfy the foregoing obligations thereby secured and the costs and expenses of sale, including a reasonable charge by the Trustee.

---

PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit J - 20**



Ja 17853066 (TGN)

**RECORDING COVER SHEET**
**Pursuant to ORS 205.234**

After recording return to:

Northwest Trustee Services, Inc.
As successor trustee
Attention: Winston Khan
P.O. Box 997
Bellevue, WA  98009-0997

JOSEPHINE COUNTY OFFICIAL RECORDS
ART HARVEY, COUNTY CLERK    **2012-004821**
MTG-AMN
Cnt=1  Pgs=7  Stn=2  RHENKELS    04/20/2012 02:51 PM
$35.00 $11.00 $15.00 $8.00 $5.00         Total:$74.00



0028878720120004821007007 2

I, Art Harvey, County Clerk, certify that the within document
was received and duly recorded in the official records of
Josephine County.

74.—

1.   **AFFIDAVIT OF SUPPLEMENTAL MAILING – TRUSTEE'S NOTICE OF SALE**

**Original Grantor(s) on Trust Deed:  Michael J Hart and Mary A Hart, husband and wife**

**Beneficiary:  Mortgage Electronic Registration Systems, Inc. solely as nominee for Mission Hills Mortgage Corporation**

**THIS COVER SHEET HAS BEEN PREPARED BY THE PERSON PRESENTING THE ATTACHED INSTRUMENT FOR RECORDING.  ANY ERRORS CONTAINED IN THIS COVER SHEET DO NOT AFFECT THE TRANSACTION(S) CONTAINED IN THE INSTRUMENT ITSELF.**

*Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2012.4821 Page: 1 of 7*
*Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

Exhibit K - 1

## AFFIDAVIT OF SUPPLEMENTAL MAILING TRUSTEE'S NOTICE OF SALE

STATE OF WASHINGTON, County of KING) ss:

I, the undersigned, being first duly sworn, depose and say and certify that:

At all times hereinafter mentioned, I was and now am a resident of the State of Washington, a competent person over the age of eighteen years and not the beneficiary or beneficiary's successor in interest named in the attached original notice of sale given under the terms of that certain deed described in said notice.

I gave notice of the sale of the real property described in the attached notice of sale by mailing a copy thereof by both first class and certified mail with return receipt requested to each of the following named persons (or their legal representatives, where so indicated) at their respective last known address, to-wit:

Gordon Edwards
c/o Mark Lansing PC, Mark Lansing, Attorney at Law
307 Northwest "E" Street
Grants Pass, OR 97526

John Kroger, Attorney General
Oregon Department of Justice
1162 Court Street N.E.
Salem, OR 97301-4096

Department of Revenue
955 Center Street NE
Salem, OR 97301-2555

Department of Revenue
PTAC, Collections
PO Box 14725
Salem, OR 97309-5018

Said persons include (a) the grantor in the trust deed, (b) any successor in interest to the grantor whose interest appears of record or of whose interest the trustee or the beneficiary has actual notice, (c) any person, including the Department of Revenue or any other state agency, having a lien or interest subsequent to the trust deed if the lien or interest appears of record or the beneficiary has actual notice of the lien or interest, and (d) any person requesting notice, as required by ORS 86.785.

Each of the notices so mailed was certified to be a true copy of the original notice of sale, each such copy was contained in a sealed envelope, with postage thereon fully prepaid, and was deposited by me in the United States post office at Bellevue, Washington, on 04·19·12. With respect to each person listed above, one such notice was mailed with postage thereon sufficient for first class delivery to the address indicated, and another such notice was mailed with a proper form to request and obtain a return receipt and postage thereon in the amount sufficient to accomplish the same. Each of said notices was mailed after the notice of default and election to sell described in said notice of sale was recorded.

As used herein, the singular includes the plural, trustee includes successor trustee, and person includes corporation and any other legal or commercial entity.

_Monica Gradin_

STATE OF WASHINGTON    )
                        ) ss.
COUNTY OF KING          )

I certify that I know or have satisfactory evidence that _Monica Gradin_ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument and acknowledged it to be (his/her) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: 4-17-2012

_Myrtle Louise Walvatne_
NOTARY PUBLIC in and for the State of
Washington, residing at King Co.
My commission expires 3-9-15

---

AFFIDAVIT OF MAILING TRUSTEE'S NOTICE OF SALE
RE: Trust Deed from
HART, MICHAEL J. and MARY A.
                Grantor
                 to
Northwest Trustee Services, Inc.,
        Trustee            File No. 7021.10631

After recording return to:
Northwest Trustee Services, Inc.
Successor by merger to Northwest Trustee Services, PLLC
(formerly known as Northwest Trustee Services, LLC)
Attn: Winston Khan
P.O. Box 997
Bellevue, WA 98009-0997

MYRTLE LOUISE WALVATNE
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
03-09-15

PDF created with pdfFactory trial version www.pdffactory.com

Exhibit K - 2



**COPY** 3

### December 12, 2011

### Notice

**Pursuant to the Federal Fair Debt Collection Practices Act: If you are the consumer who originally contracted the debt or if you assumed the debt, then you are notified that:**

1. As of the date of this notice, you owe $112,917.74. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check. For further information write or call:

    **Northwest Trustee Services, Inc.**
    **P.O. Box 997**
    **Bellevue, WA 98009-0997**
    **(425) 586-1900**

2. The creditor to whom the debt is owed is Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing LP/Bank of America, N.A..

3. Unless within 30 days after receipt of this notice you dispute the debt or any portion of it, we will assume the debt to be valid.

4. If you notify us within 30 days after receipt of this notice that you dispute the debt or any part of it, we shall obtain verification of the debt and mail it to you.

5. If you request within 30 days after receipt of this notice, we will provide you with the name and address of the original creditor, if different from the current creditor.

HART, MICHAEL J. and MARY A./7021.10631

Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2012.4821 Page: 3 of 7
Order: deeds Comment:
PDF created with pdfFactory trial version www.pdffactory.com

Exhibit K - 3



**TRUSTEE'S NOTICE OF SALE**

**File No. 7021.10631**

Reference is made to that certain trust deed made by Michael J Hart and Mary A Hart, husband and wife, as grantor, to Key Title Company, as trustee, in favor of Mortgage Electronic Registration Systems, Inc. solely as nominee for Mission Hills Mortgage Corporation, as beneficiary, dated 01/17/02, recorded 01/25/02, in the mortgage records of Josephine County, Oregon, as 02-1955 and subsequently assigned to Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing LP by Assignment, covering the following described real property situated in said county and state, to wit:

PARCEL 1: Beginning at the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon; thence South along the West line of said Section 1155 feet to the North line of the land described in Volume 172, Page 74, Josephine County Deed Records; thence East 751 feet to an iron pipe; thence South 165 feet to the South line of the North half of the Northwest Quarter of said Section 14; thence East 433.5 feet; thence North 46 degrees East 192 feet; thence North 36 degrees West 342 feet to the South bank of the Murphy Ditch; thence South 63 degrees 26' West 279.5 feet; thence North 1025 feet to the North line of said Section 14; thence West 874.5 feet to the point of beginning. LESS AND EXCEPTING: Commencing at the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon; thence running South along the Section line 1155 feet; thence East 751 feet; thence South 165 feet to the true point of beginning; thence North 115 feet; thence Southeasterly 44 feet to a point on the County Road which is 106 feet Northeasterly from the true point of beginning; thence Southwesterly 106 feet to the true point of beginning.

PARCEL 2: Commencing 1155 feet South and 751 feet East of the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon, which is the true point of beginning; thence South 50 feet; thence in a Northwesterly direction 158 feet to a point which is West 150 feet from said true point of beginning; thence East 150 feet to the true point of beginning.

PROPERTY ADDRESS:  990 Fish Hatchery Road
Grants Pass, OR 97527

Both the beneficiary and the trustee have elected to sell the real property to satisfy the obligations secured by the trust deed and a notice of default has been recorded pursuant to Oregon Revised Statutes 86.735(3); the default for which the foreclosure is made is grantor's failure to pay when due the following sums: monthly payments of $912.07 beginning 06/01/11; plus late charges of $42.48 each month beginning 06/16/11; plus prior accrued late charges of $0.00; plus advances of $0.00; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable.

By reason of said default the beneficiary has declared all sums owing on the obligation secured by the trust deed immediately due and payable, said sums being the following, to wit: $106,030.42 with interest thereon at the rate of 7.625 percent per annum beginning 05/01/11; plus late charges of $42.48 each month beginning 06/16/11 until paid; plus prior accrued late charges of $0.00; plus advances of $0.00; together with title expense, costs, trustee's fees and attorneys fees incurred herein by reason of said default; any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable.

WHEREFORE, notice hereby is given that the undersigned trustee will on April 24, 2012 at the hour of 10:00 o'clock, A.M. in accord with the standard of time established by ORS 187.110, at the following place: inside the main lobby of the Josephine County Courthouse, 500 NW 6th ( 6th and C), in the City of Grants Pass, County of Josephine, State of Oregon, sell at public auction to the highest bidder for cash the interest in the described real

PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit K - 4**

property which the grantor had or had power to convey at the time of the execution by grantor of the trust deed, together with any interest which the grantor or grantor's successors in interest acquired after the execution of the trust deed, to satisfy the foregoing obligations thereby secured and the costs and expenses of sale, including a reasonable charge by the trustee. Notice is further given that for reinstatement or payoff quotes requested pursuant to ORS 86.757 and 86.759 must be timely communicated in a written request that complies with that statute addressed to the trustee's "Urgent Request Desk" either by personal delivery to the trustee's physical offices (call for address) or by first class, certified mail, return receipt requested, addressed to the trustee's post office box address set forth in this notice. Due to potential conflicts with federal law, persons having no record legal or equitable interest in the subject property will only receive information concerning the lender's estimated or actual bid. Lender bid information is also available at the trustee's website, www.northwesttrustee.com. Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing any other default complained of herein that is capable of being cured by tendering the performance required under the obligation or trust deed, and in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and trust deed, together with trustee's and attorney's fees not exceeding the amounts provided by said ORS 86.753. Requests from persons named in ORS 86.753 for reinstatement quotes received less than six days prior to the date set for the trustee's sale will be honored only at the discretion of the beneficiary or if required by the terms of the loan documents.

In construing this notice, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other person owing an obligation, the performance of which is secured by said trust deed, and the words "trustee" and "beneficiary" include their respective successors in interest, if any.

## NOTICE TO RESIDENTIAL TENANTS

The property in which you are living is in foreclosure. A foreclosure sale is scheduled for April 24, 2012. The date of this sale may be postponed. Unless the lender that is foreclosing on this property is paid before the sale date, the foreclosure will go through and someone new will own this property. After the sale, the new owner is required to provide you with contact information and notice that the sale took place.

The following information applies to you only if you are a bona fide tenant occupying and renting this property as a residential dwelling under a legitimate rental agreement. The information does not apply to you if you own this property or if you are not a bona fide residential tenant.

If the foreclosure sale goes through, the new owner will have the right to require you to move out. Before the new owner can require you to move, the new owner must provide you with written notice that specifies the date by which you must move out. If you do not leave before the move-out date, the new owner can have the sheriff remove you from the property after a court hearing. You will receive notice of the court hearing.

## PROTECTION FROM EVICTION

IF YOU ARE A BONA FIDE TENANT OCCUPYING AND RENTING THIS PROPERTY AS A RESIDENTIAL DWELLING, YOU HAVE THE RIGHT TO CONTINUE LIVING IN THIS PROPERTY AFTER THE FORECLOSURE SALE FOR:

☐ THE REMAINDER OF YOUR FIXED TERM LEASE, IF YOU HAVE A FIXED TERM LEASE; OR

☐ AT LEAST 90 DAYS FROM THE DATE YOU ARE GIVEN A WRITTEN TERMINATION NOTICE.

If the new owner wants to move in and use this property as a primary residence, the new owner can give you written notice and require you to move out after 90 days, even though you have a fixed term lease with more than 90 days left.

Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2012.4821 Page: 5 of 7
Order: deeds Comment:

PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit K - 5**

You must be provided with at least 90 days' written notice after the foreclosure sale before you can be required to move.

A bona fide tenant is a residential tenant who is not the borrower (property owner) or a child, spouse or parent of the borrower, and whose rental agreement:

☐ Is the result of an arm's-length transaction;

☐ Requires the payment of rent that is not substantially less than fair market rent for the property, unless the rent is reduced or subsidized due to a federal, state or local subsidy; and

☐ Was entered into prior to the date of the foreclosure sale.

### ABOUT YOUR TENANCY

### BETWEEN NOW AND THE FORECLOSURE SALE:

### RENT

YOU SHOULD CONTINUE TO PAY RENT TO YOUR LANDLORD UNTIL THE PROPERTY IS SOLD OR UNTIL A COURT TELLS YOU OTHERWISE. IF YOU DO NOT PAY RENT, YOU CAN BE EVICTED. BE SURE TO KEEP PROOF OF ANY PAYMENTS YOU MAKE.

### SECURITY DEPOSIT

You may apply your security deposit and any rent you paid in advance against the current rent you owe your landlord as provided in ORS 90.367. To do this, you must notify your landlord in writing that you want to subtract the amount of your security deposit or prepaid rent from your rent payment. You may do this only for the rent you owe your current landlord. If you do this, you must do so before the foreclosure sale. The business or individual who buys this property at the foreclosure sale is not responsible to you for any deposit or prepaid rent you paid to your landlord.

### ABOUT YOUR TENANCY

### AFTER THE FORECLOSURE SALE

The new owner that buys this property at the foreclosure sale may be willing to allow you to stay as a tenant instead of requiring you to move out after 90 days or at the end of your fixed term lease. After the sale, you should receive a written notice informing you that the sale took place and giving you the new owner's name and contact information. You should contact the new owner if you would like to stay. If the new owner accepts rent from you, signs a new residential rental agreement with you or does not notify you in writing within 30 days after the date of the foreclosure sale that you must move out, the new owner becomes your new landlord and must maintain the property. Otherwise:

☐ You do not owe rent;

☐ The new owner is not your landlord and is not responsible for maintaining the property on your behalf; and

☐ You must move out by the date the new owner specifies in a notice to you.

The new owner may offer to pay your moving expenses and any other costs or amounts you and the new owner agree on in exchange for your agreement to leave the premises in less than 90 days or before your fixed term lease expires. You should speak with a lawyer to fully understand your rights before making any decisions regarding your tenancy.

IT IS UNLAWFUL FOR ANY PERSON TO TRY TO FORCE YOU TO LEAVE YOUR DWELLING UNIT WITHOUT FIRST GIVING YOU WRITTEN NOTICE AND GOING TO COURT TO EVICT YOU. FOR

*Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2012.4821 Page: 6 of 7*
*Order: deeds Comment:*
PDF created with pdfFactory trial version www.pdffactory.com

**Exhibit K - 6**



MORE INFORMATION ABOUT YOUR RIGHTS, YOU SHOULD CONSULT A LAWYER. If you believe you need legal assistance, contact the Oregon State Bar Association (16037 Upper Boones Ferry Road, Tigard, Oregon 97224, (503)620-0222, toll-free in Oregon (800)452-8260) and ask for the lawyer referral service. If you do not have enough money to pay a lawyer and are otherwise eligible, you may be able to receive legal assistance for free. Information about whom to contact for free legal assistance; a county-by-county listing of legal aid resources may be found on the Internet at http://www.osbar.org/public/ris/lowcostlegalhelp/legalaid.html.

The trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference. You may also access sale status at www.northwesttrustee.com and www.USA-Foreclosure.com.

Dated: **December 15**, 20 **11**

Northwest Trustee Services, Inc.

By _____
Assistant Vice President,
Northwest Trustee Services, Inc.

For further information, please contact:

Winston Khan
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997
(425) 586-1900
File No.7021.10631/HART, MICHAEL J. and MARY A.

State of Washington, County of King) ss:

     I, the undersigned, certify that the foregoing is a complete and accurate copy of the original trustee's notice of sale.

_____
**By Authorized Signer**

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**Exhibit K - 7**



**TRUSTEE'S DEED**

THIS INDENTURE, made May 18, 2012, between Northwest Trustee Services, Inc., hereinafter called the Trustee and Federal National Mortgage Association, hereinafter called the second party;



**RECITALS:**

RECITALS: Michael J Hart and Mary A Hart, husband and wife, as grantors, whose address is 990 Fish Hatchery Road, Grants Pass, OR 97527 executed and delivered to: Key Title Company, as trustee, for the benefit of Mortgage Electronic Registration Systems, Inc. solely as nominee for Mission Hills Mortgage Corporation, as beneficiary, a trust deed dated 01/17/02, duly recorded on 01/25/02 in the mortgage records of Josephine County, Oregon in 02-1955 and subsequently assigned to Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing LP by Assignment recorded as 2010-013783. In the trust deed, the real property described below ("Property") was conveyed by the grantor to the trustee to secure, among other things, the performance of the grantor's obligations to the beneficiary. The grantor thereafter defaulted in the performance of those obligations and such default(s) still existed at the time of the trustee's sale of the Property described below.

Because of the default(s), the record beneficiary under the trust deed or its predecessor declared all sums secured by the trust deed immediately due and owing; therefore, a Notice of Default, containing an election to sell the Property and to foreclose the trust deed by advertisement and sale to satisfy grantor's obligations owed to the beneficiary was recorded in the mortgage records of the county in which the Property is located on 12/14/11, in 2011-014790.

After recording the Notice of Default, the trustee gave notice to the grantor(s) and/or occupants pursuant ORS 86.737 by mailing said notice by both first class and certified mail with return receipt requested. Trustee gave notice of the time for and place of sale of the Property as required by law; copies of the Trustee's Notice of Sale were served pursuant to ORCP 7D.(2) and 7D.(3) or mailed by both first class and certified mail with return receipt requested to the last known address of the persons or their legal representatives, if any, named in ORS 86.740(1) and (2)(a), at least 120 days before the date the Property was sold, and the Trustee's Notice of Sale was mailed by first class and certified mail with return receipt requested, to the last-known address of the guardian, conservator or administrator or executor of any person named in ORS 86.740(1), promptly after the trustee received knowledge of the disability, insanity or death of any such person; the Trustee's Notice of Sale was served upon occupants of the Property in the manner in which a summons is served pursuant to ORCP 7D.(2) and 7D.(3) at least 120 days before the date the Property was sold, pursuant to ORS 86.750(1). If the foreclosure was stayed and released from stay, copies of an Amended Notice of Sale in the form required by ORS 86.755(6) were mailed within thirty days after release from stay by registered or certified mail to the last-known address of those persons listed in ORS 86.740 and 86.750(1) and any person requesting notice who was present at the time and place set for the sale which was stayed. Further, the trustee published a copy of the Trustee's Notice of Sale in a newspaper of general circulation in each county in which the Property is located, once a week for four successive weeks; the last publication of Notice of Trustee's Sale occurred more than twenty days prior to the date of sale. Compliance with the ORS 86.737 and the mailing, service and publication of the Trustee's Notice of Sale are evidenced by one or more affidavits or proofs of service duly recorded prior to the date of sale in the official records of the county in which the Property is located.

| | |
|---|---|
| Northwest Trustee Services, Inc.<br>P.O. Box 997<br>Bellevue, WA 98009-0997;                     Grantor | FOR COUNTY USE: |
| Federal National Mortgage Association<br>P.O. Box 650043<br>Dallas, TX 75265-0043;<br>Grantee | **JOSEPHINE COUNTY OFFICIAL RECORDS**<br>**ART HARVEY, COUNTY CLERK** **2012-007052**<br>DED-TSD<br>Cnt=1 Pgs=3 Stn=2 RHENKELS  06/11/2012 10:07 AM<br>$15.00 $11.00 $15.00 $8.00 $5.00          Total:$54.00 |
| After Recording Return to:<br>Northwest Trustee Services, Inc.<br>P.O. Box 997<br>Bellevue, WA 98009-0997      7021.10631 | |
| Until a change is required all tax statements shall be sent to the following address:<br>Federal National Mortgage Association<br>P.O. Box 650043<br>Dallas, TX 75265-0043 | I, Art Harvey, County Clerk, certify that the within document was received and duly recorded in the official records of Josephine County. |

Consideration:       $114,922.06

**Exhibit L - 1**

The trustee has no actual notice of any person, other than the persons identified in the affidavit(s) and proof(s) of mailing and/or service, having or claiming any lien on or interest in the Property, entitled to notice pursuant to ORS 86.740(1)(b) or (1)(c).

Pursuant to the Notice of Trustee's Sale, one or more due public proclamations of the sale's postponement and/or an Amended Notice of Trustee's Sale, the trustee -- on May 14, 2012, at 10:00 a.m. in accord with the standard of time established by ORS 187.110, and at the place so fixed for sale, in full accordance with the laws of the State of Oregon and pursuant to the powers conferred upon said trustee by the trust deed -- sold the Property in one parcel at public auction to Federal National Mortgage Association  for the sum of $114,922.06, Federal National Mortgage Association being the highest and best bidder at the sale.  The true and actual consideration paid for this transfer is the sum of $114,922.06

NOW, THEREFORE, in consideration of the sum of $114,922.06 paid by Federal National Mortgage Association in cash, the receipt of which is acknowledged, and by the authority vested in the trustee by the laws of the State of Oregon and by the trust deed, the trustee does hereby convey Federal National Mortgage Association all interest the grantor had or had the power to convey at the time of grantor's execution of the trust deed, together with any interest the grantor or grantor's successors in interest acquired after the execution of the trust deed in and to the Property, which is legally described as follows:

### See Legal Description Attached

Commonly known as:  990 Fish Hatchery Road, Grants Pass, OR  97527

This conveyance is made without representations or warranties of any kind.  By recording this Trustee's Deed, Grantee understands, acknowledges and agrees that the Property was purchased in the context of a foreclosure, that the trustee made no representations to Grantee concerning the Property and that the trustee owed no duty to make disclosures to Grantee concerning the Property, Grantee relying solely upon his/her/their/its own due diligence investigation before electing to bid for the Property.

IN WITNESS WHEREOF, the undersigned trustee has executed this document; if the undersigned is a corporation, it has caused its corporate name to be signed and its seal affixed hereto by an officer or other person duly authorized thereunto by order of its Board of Directors.

Jeff Stenman, Assistant Vice President
Northwest Trustee Services, Inc., Trustee

STATE OF WASHINGTON      )
                  ) ss.
COUNTY OF KING         )

I certify that I know or have satisfactory evidence that Jeff Stenman is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as an Assistant Vice President of Northwest Trustee Services, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated:  May 18, 2012

NOTARY PUBLIC in and for the State of
Washington, residing at King Co.
My commission expires 11/9/2012

PENNI K. WARREN
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
NOVEMBER 9, 2012

THIS INSTRUMENT WILL NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY APPROVED USES AND TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES AS DEFINED IN ORS 30.930

*Description: Josephine,OR Document - Year.DocID(10/21/04 to Current) 2012.7052 Page: 2 of 3*
*Order: karthik Comment:*

**Exhibit L - 2**



# Legal Description

PARCEL 1: Beginning at the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon; thence South along the West line of said Section 1155 feet to the North line of the land described in Volume 172, Page 74, Josephine County Deed Records; thence East 751 feet to an iron pipe; thence South 165 feet to the South line of the North half of the Northwest Quarter of said Section 14; thence East 433.5 feet; thence North 46 degrees East 192 feet; thence North 36 degrees West 342 feet to the South bank of the Murphy Ditch; thence South 63 degrees 26' West 279.5 feet; thence North 1025 feet to the North line of said Section 14; thence West 874.5 feet to the point of beginning. LESS AND EXCEPTING: Commencing at the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon; thence running South along the Section line 1155 feet; thence East 751 feet; thence South 165 feet to the true point of beginning; thence North 115 feet; thence Southeasterly 44 feet to a point on the County Road which is 106 feet Northeasterly from the true point of beginning; thence Southwesterly 106 feet to the true point of beginning.

PARCEL 2: Commencing 1155 feet South and 751 feet East of the Northwest corner of Section 14, Township 37 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon, which is the true point of beginning; thence South 50 feet; thence in a Northwesterly direction 158 feet to a point which is West 150 feet from said true point of beginning; thence East 150 feet to the true point of beginning.

**7021.10631**

**Exhibit L - 3**

**Certificate of Service**

The undersigned attorney hereby certifies that the foregoing Amended Complaint was served on the Defendants identified in the Plaintiff's Complaint, by electronic service, on their attorneys of record, as ECF Participants, in this action.  This Amended Complaint is being served together with a Summons issued and served under the provisions of Fed.R.Civ.P. 4 to each newly added Defendants to this action, who are identified in the in the foregoing Amended Complaint.

**DATED** this   19th   day of September, 2012.

/s/ J. Campbell_____
G. Jefferson Campbell, Jr., OSB #750611
Of Attorneys for Plaintiff